A90A0337. SMITH v. THE STATE.
(393 SE2d 743)

SOGNIER, Judge.

Joseph Smith was convicted by a jury on four counts of burglary, three counts of aggravated assault, two counts of rape, and two counts of aggravated sodomy. He filed this appeal from the judgment entered on the verdict.

1. Appellant's first enumeration of error concerns the trial court's denial of his motion to suppress custodial statements he gave shortly after his arrest. He contends the statements were inadmissible because they were taken after he invoked his right to counsel.

The record reveals that appellant was arrested in Americus on the night of December 1, 1988 after being identified by one of the assault and burglary victims. Captain James Hicks took appellant to an interview room at the Americus police station, where Detective J. J. Millege read appellant his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). Hicks testified that when appellant responded, "I might need an attorney," Hicks turned the case over to Millege and left the room. According to the testimony of Millege and Detective Ernest Mansfield, who remained in the room, appellant then stated that he had mentioned obtaining counsel only because he was uncomfortable with Hicks. Millege stated he then explained the charges that had been filed against appellant, and appellant then asked him, "What would happen if I just said I wanted a lawyer?" After Millege responded that he would be booked on the charges because the police already had sufficient evidence, appellant

decided "I may as well talk." Millege again advised appellant of his *Miranda* rights, obtained appellant's signature on a rights waiver form, and then took a tape recorded statement from him. Mansfield testified that he had left the interview room during the second time Millege advised appellant of his rights, and that when he returned and discovered that appellant had begun to give a statement, he interrupted and asked appellant whether he had changed his mind about procuring counsel, and appellant responded, "I don't need a lawyer. It is all down hill anyway now." (This exchange with Mansfield was on the portion of the tape recording that was played for the jury.) Both detectives testified that appellant was questioned twice the next day, that each time he was informed of his rights and signed waiver forms, and that he did not mention obtaining counsel. Appellant testified that he told Hicks he wanted a lawyer, but that the detectives continued to talk to him about the charges, and that he did not understand he could refuse to talk to them without counsel present.

"An accused in custody, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless he validly waives his earlier request for the assistance of counsel. . . . First, courts must determine whether the accused actually invoked his right to counsel. Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." (Citations and punctuation omitted.) *Hall v. State*, 255 Ga. 267, 269-270 (336 SE2d 812) (1985). If an equivocal or ambiguous request for counsel is made, further questioning must be limited to clarifying that request, and interrogation may not be resumed unless it has been clarified that the accused has made an effective waiver of his right to counsel. Id. at 272-273.

After a careful review of the transcript, we are convinced that any ambiguity or equivocation in appellant's statements regarding counsel was clarified (1) when Millege stopped interrogating appellant and spoke only to explain the upcoming procedures in response to appellant's questions and then again advised appellant of his rights and obtained a written waiver; and (2) when Mansfield inquired whether appellant had changed his mind about obtaining counsel. See id. at 274-275 (3). There is no evidence the officers engaged in subterfuge or coercive tactics. See id. at 275 (3). Although appellant testified he did not fully understand his rights, the waiver forms he signed explained those rights in clear and concise language, and there is no evidence appellant is unable to read or was impaired by drugs or alcohol. Accordingly, we hold the trial court did not err by denying the

motion to suppress and admitting the statements into evidence. See id.

2. Appellant maintains the evidence was insufficient to support the guilty verdicts on counts 1-9 (all but the burglary and aggravated assault of M. R., the victim who positively identified appellant to the police and at trial) because his confessions were not corroborated by other evidence as required by OCGA § 24-3-53.

The evidence adduced at trial established that appellant, his head covered with a stocking, entered the home of M. R. and hid in a closet until she returned home. He then threatened her with a knife and removed her pants and underwear, but she was able to convince him to give her the knife. She agreed to meet him at a local store the next night. She then alerted the police, who equipped her with a body microphone and arrested appellant when she saw him at the designated meeting spot and identified him as her attacker. After the detectives began questioning appellant regarding other similar crimes in the area, he revealed his role in three prior incidents: entering a mobile home at Briar Cliff Trailer Park and raping the woman who lived there; entering a home on Harris Street, waking the woman he found sleeping on the floor next to a small child, and then running out when the woman screamed; and breaking into a house on Ridgeway Drive, brandishing a toy gun before the female occupant, and then raping her.

At trial, N. D. testified that on the night of April 1, 1988, she was asleep in the mobile home she shared with her mother at Briar Cliff Trailer Park when a man entered her bedroom, forced her onto the bed, and raped and orally sodomized her. G. T. stated that on the night of October 8, 1988, she and her young son had fallen asleep on the den floor of their Harris Street home when a man with a stocking over his head entered the house. The intruder pressed against her side what appeared to be a gun. She struggled with him, and he ran out the back door when she screamed for her older son. G. L. testified that she was in bed in her Ridgeway Drive house on the night of October 23, 1988 when she awoke to find a man with a stocking on his head standing over her with a gun. After threatening to kill her if she screamed, the perpetrator raped and orally sodomized her.

"[A] conviction may be had on a confession although corroborated only by proof of the corpus delicti. [Cit.] The amount of evidence necessary to corroborate a confession is for the jury to decide, as it may consider the confession along with other facts and circumstances independent and separate from it in determining whether or not the corpus delicti has been established to their satisfaction. [Cit.]" *Nation v. State*, 180 Ga. App. 460, 461 (1) (349 SE2d 479) (1986). Here, the testimony of the victims established the corpus delicti of each crime, thereby providing the requisite corroboration.

See id. We have reviewed the evidence in its entirety and find it sufficient to meet the standard of proof required by *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

3. Appellant next contends the trial court erred by allowing Millege to play a portion of appellant's tape recorded statement and read the accompanying transcript to the jury without providing the transcript to the jury. The record, however, shows that the recording and transcript were introduced at the request of appellant's counsel, who then made no further request and interposed no objection. Consequently, we find no error.

4. Appellant's final claim of error is that the court's charge on voluntariness of custodial statements was inadequate because the jury was not told to consider the totality of the circumstances. The record reveals that the trial judge gave an extensive explanation of the *Miranda* rights of an accused, the steps to be taken if the accused requests counsel, and the elements to be considered in determining the voluntariness of any subsequent statement. While the charge did not include the words "totality of the circumstances," we find the court's description thoroughly covered the factors to be considered in weighing the totality of the circumstances and clearly informed the jurors that they should address each factor. Contrary to appellant's argument, we do not find that the specific factors set forth in *Riley v. State*, 237 Ga. 124, 128 (226 SE2d 922) (1976) were required to be given to the jury because those apply to juveniles who give statements outside the presence of their parents. Given that the record does not indicate that appellant requested a voluntariness charge, nor did he either interpose or reserve an objection to the court's charge, and we find no error clearly harmful as a matter of law, this enumeration is without merit. *Byrd v. State*, 156 Ga. App. 522-523 (2) (275 SE2d 108) (1980).

*Judgment affirmed. Carley, C. J., and McMurray, P. J., concur.*

DECIDED MAY 1, 1990.

*Walter S. Chew, Jr.*, for appellant.
*John R. Parks, District Attorney, Barbara A. Becraft, Assistant District Attorney*, for appellee.