A05A0166. CUMMINGS v. THE STATE.
(614 SE2d 121)

MIKELL, Judge.

After a jury trial in the Superior Court of McIntosh County, Jerry Cummings was convicted of aggravated assault, armed robbery, kidnapping, and hijacking a motor vehicle. On appeal, Cummings argues that the trial court erred in finding that his confession was freely and voluntarily made and in refusing the jury's request to view his entire videotaped interview. Cummings also argues that the trial court should have granted his motion for directed verdict of acquittal because his confession was not corroborated by other evidence. We affirm.

"On appeal, we view the evidence in the light most favorable to support the jury's verdict; an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility."[1] So viewed, the evidence shows that on February 6, 2003, at approximately 4:00 p.m., Claude McGahee, an 82-year-old retiree, was raking leaves at his home when he was approached by Cummings, who asked for help to jumpstart his car. McGahee agreed to help, retrieved his truck from the rear of his home, and picked Cummings up. En route, Cummings advised McGahee that his battery was at a welding shop and instructed McGahee to stop at a trailer. Cummings went into the trailer and returned to the truck carrying an iron tire jack. Cummings then directed McGahee to another location, and McGahee realized that Cummings was not being truthful and confronted him.

Cummings refused to exit the truck, struck McGahee in the head several times with the jack, repeatedly threatened to kill him, and robbed him of $50. Cummings pulled McGahee to the passenger's side of the truck, drove the truck a short distance, then jumped out and ran away. McGahee sustained several cuts and lacerations and suffered internal cranial hemorrhaging, which ultimately required surgery.

When McGahee reported the incident to the police, he did not give them Cummings' name. He testified that he did not know

---

[1] (Footnote omitted.) *Weeks v. State*, 268 Ga. App. 886 (1) (602 SE2d 882) (2004).

Cummings, but knew Cummings' family for quite some time. McGahee described Cummings as six feet tall and estimated that he weighed 175 pounds, but testified that he could not identify him if he saw him.

Janie Rutledge, who lived in the area of the assault, testified that shortly after 4:00 p.m., Cummings opened the door to her kitchen and said he needed a ride "quick, fast and in a hurry." Rutledge recalled that Cummings was wearing a dark blue sweater with a zipped front and a hood. Rutledge told him that she could not assist him. After Cummings left, Rutledge's brother came by and told her that there was a sweater behind her van. She told him that she had just parked the van and that nothing was there at that time. Approximately 15 minutes later, Rutledge drove down the street and noticed McGahee's truck parked on the side of the road and several police cars. When the police asked her if she had seen anyone running in the vicinity, she told them about Cummings and the sweater.

Captain J. W. Lyons testified that he collected a sweatshirt from Rutledge's home. At trial, Rutledge identified the sweatshirt as the garment that Cummings was wearing when she saw him. A forensic biologist testified that no blood was found on the sweater.

Georgia Bureau of Investigation (GBI) crime team specialist Jim Turner testified that he investigated the crime scene; that there was blood on the side of McGahee's truck and on the interior of the door and the door opening; that there was blood spatter on the ceiling of the truck; and that a tire jack was located approximately 80 feet behind the truck. Turner identified the tire jack at trial and testified that he submitted it for testing and that blood was found on the jack. Turner also identified the photographs taken of the crime scene.

GBI Investigator William Clyde Jennings testified that Cummings became a suspect based on the information provided by Rutledge. Cummings was questioned at the local police department by Jennings and Lyons. Jennings read Cummings his *Miranda* rights, and Cummings signed a waiver of rights form. The entire interview was videotaped.

Lyons testified that the interview occurred in his office, which is equipped with a camera and microphone, that he knew how to operate the equipment, and that it was in working order that evening. He identified the videotape of the interview, and it was admitted into evidence and played for the jury. Defense counsel did not object.

Cummings admitted that he attacked McGahee because he wanted money to buy drugs; that McGahee picked him up from the front of McGahee's house; that he used an iron jack to beat McGahee; that he drove McGahee's truck a short distance; that he ran away after he took McGahee's $50; that he discarded the tire jack; and that he ran to Rutledge's house and left his sweater in her yard. Near the

end of the interview, Cummings told Jennings that he had a crack cocaine problem. When asked if he was under the influence during the interview, Cummings stated that he had "already come down." On cross-examination, Lyons admitted that in the portion of the tape through which he fast forwarded, Cummings denied his involvement in the incident.

1. In his first enumerated error, Cummings argues that the trial court erred when it determined during the *Jackson-Denno* hearing that his confession was voluntary. Specifically, Cummings contends that the trial court did not consider the totality of the circumstances when arriving at its decision because it declined to view the entire videotape. However, the record shows that at the hearing, defense counsel stated:

> I understand the State intends to use a redacted version [of the videotape] because there's some material that we've agreed would not be proper to be showing to the jury. It might save the Court time for me to advise that the State has reviewed the videotape and I have also seen the videotape. And we're in agreement that the videotape — that the redacted version will be appropriate if the Court doesn't care to review it.

Because Cummings acquiesced in the use of the redacted portion of the tape, we find no error. "A defendant will not be allowed to induce an asserted error, sit silently hoping for acquittal, and obtain a new trial when that tactic fails. Induced error is impermissible and furnishes no ground for reversal."[2] Furthermore, after the officers testified during the hearing and the court indicated that it would not review the videotape, Cummings did not object to the court's decision. The failure to object waives this issue on appeal.[3] Additionally, Cummings did not object to the court's ruling that his confession was admissible. Therefore, Cummings has waived any arguments that he may have had as to the confession's admissibility.[4]

2. In his next error, Cummings argues that the trial court erred by denying the jury's request to view the entire videotape. When the question was posed by the jury, the trial court replied: "Well, you can't

---

[2] (Citation and punctuation omitted.) *Brison v. State*, 248 Ga. App. 168, 169 (3) (545 SE2d 345) (2001).

[3] See *McGee v. State*, 205 Ga. App. 722, 729 (13) (423 SE2d 666) (1992).

[4] See *Williams v. State*, 270 Ga. App. 480, 482 (606 SE2d 671) (2004) (even where objection made as to voluntariness, failure to object to confession as inadmissible result of illegal detention waives latter argument on appeal); *Thomas v. State*, 264 Ga. App. 389, 391 (1) (590 SE2d 778) (2003) (in absence of any contention at trial that defendant's confession was not voluntary, trial court did not err in admitting it).

see all of the tape because parts of it is [sic] inadmissible. In other words, the attorneys for both sides have agreed that there are things on there [sic] should not be seen by the jury. They're irrelevant. So, all you can see is what you saw before." Cummings did not object to the trial court's response. "Although no objection to the trial court's response to the jury's questions was made, [Cummings] now claims error thereon. [Cummings'] failure to object to the trial court's reply to the jury's questions waives any claim of error relating thereto. Absent a ruling by the trial court on this issue, there is nothing for this Court to review."[5]

3. Lastly, Cummings argues that the trial court should have directed a verdict in his favor because his confession was not corroborated by other evidence. We disagree.

OCGA § 24-3-53 recognizes that "[a] confession alone, uncorroborated by any other evidence, shall not justify a conviction." However, "evidence of a confession, freely and voluntarily made by the defendant, is direct evidence of the highest character, and, when corroborated by proof of the corpus delicti, is sufficient to authorize [a] conviction."[6] Proof of the corpus delicti is sufficient corroboration that a crime has been committed.[7] "The corroborating evidence or circumstances need not connect the defendant definitely with the perpetration of the offense. Corroboration in any material particular satisfies the requirements of the law. The finder of fact must determine the amount of evidence necessary to corroborate a confession."[8] In doing so, the factfinder "may consider the confession along with other facts and circumstances independent and separate from it in determining whether or not the corpus delicti has been established to their satisfaction."[9] In this case, McGahee's testimony and that of the officers who investigated the crime established the corpus delicti of each crime, thereby providing the requisite corroboration. After reviewing the evidence, we find it sufficient to support Cummings' conviction under *Jackson v. Virginia*.[10]

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

---

[5] (Punctuation and footnote omitted.) *Parnell v. State*, 260 Ga. App. 213, 220 (9) (581 SE2d 263) (2003).

[6] *Berry v. State*, 48 Ga. App. 303 (1) (172 SE 647) (1934).

[7] *Blackwell v. State*, 270 Ga. 509, 510 (2) (512 SE2d 233) (1999).

[8] (Punctuation omitted.) *In the Interest of Q. D.*, 263 Ga. App. 293, 295 (587 SE2d 336) (2003), citing *McCant v. State*, 234 Ga. App. 433, 434 (1) (506 SE2d 917) (1998).

[9] (Citation and punctuation omitted.) *Smith v. State*, 195 Ga. App. 486, 488 (2) (393 SE2d 743) (1990).

[10] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

DECIDED APRIL 18, 2005.

*Donald O. Nelson*, for appellant.

*Tom Durden, District Attorney, James S. Archer, Assistant District Attorney*, for appellee.