## A07A1893. HARGROVE v. THE STATE.
(657 SE2d 282)

MIKELL, Judge.

John A. Hargrove was convicted of four counts of aggravated child molestation and three counts of child molestation based on evidence that he engaged in vaginal and anal intercourse with his daughter from 1999, when she was six years old, until 2003, when she was ten years old. Hargrove was sentenced to serve 20 years on each count, with all sentences to be served concurrently. On appeal from the denial of his motion for a new trial, Hargrove asserts that the evidence does not suffice to sustain his convictions because they were based solely on his uncorroborated confession; that the state failed to prove venue; that a social worker impermissibly bolstered the credibility of the victim; and that trial counsel rendered ineffective assistance. We reject these contentions and affirm Hargrove's convictions.

The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. Under that standard we view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Conflicts in the testimony of the witnesses, including the [s]tate's witnesses, are a matter of credibility for the jury to resolve.[1]

So viewed, the evidence shows that Hargrove and his wife separated in 1996. He moved in with his parents in Liberty County, while the victim remained with her mother, Priscilla, in Chatham County. Priscilla died of respiratory heart failure on May 9, 2003, and Hargrove took the victim and her three-year-old brother[2] to Virginia to live with Priscilla's sister. Hargrove returned to Georgia.

The victim began having severe difficulties in Virginia. According to Roberta O'Donnell, a social worker from Virginia who testified

---

[1] (Footnote omitted.) *Hutchinson v. State*, 287 Ga. App. 415 (651 SE2d 523) (2007).

[2] Hargrove is not the boy's father.

at trial, the victim was emotionally distressed and displayed severe acting out behaviors that are symptomatic of sexual abuse. For example, the victim took her feces and smeared it on carpeting; had difficulty eating; smeared her food on the walls; had nightmares; and could not keep up with her school work. O'Donnell interviewed the victim on December 15, 2003. An audiotape of the interview was played for the jury. On the tape, the victim stated that when visiting her, Hargrove "would stick his private part" in her vagina. Then she described how he would put his "area part," which she later identified as his penis, in her "behind." She never told her mother because she "was scared [Hargrove] might do something." The victim said she would "tell him to stop," but he would "keep going." Hargrove would tell the victim to "be quiet." The victim said she was scared. She said "a lot of times he'd have red eyes" when he was molesting her. When he was finished, "he would try to . . . make himself look normal." And he always told her, "make sure you don't tell nobody." The victim explained that she told her relatives in Virginia "because [Hargrove] was in Georgia, . . . and he was far away from me."

About three weeks before this interview, on November 22, 2003, Hargrove confessed to Detective Elpidio Fratichelli of the Liberty County Sheriff's Department. First, Hargrove executed a waiver of rights form indicating that he was submitting to questioning about the offenses of incest and sodomy. Next he wrote out a brief statement, which said: "I, John A. Hargrove, admit that I have had sex with my daughter. I'm very sorry for the mistake that I have made. I also admit that I have a crack cocaine problem. My failure to address my problem have left trail of hurt which I am deeply sorry for." The detective asked Hargrove a series of questions, which he answered. The detective typed them all, and Hargrove signed each page. Specifically, Hargrove stated that in his handwritten summary, he had been trying to tell the detective that he had both vaginal and anal intercourse with his daughter; that he had vaginal intercourse with her "about four times" and anal intercourse "about three times"; that all of these incidents occurred "at home" in Riceboro, which, the detective testified, was in Liberty County; and that the incidents occurred "between 1999 and 2003."

On cross-examination, Hargrove admitted that he wrote a confession in his own hand. He claimed, however, that it was not true. Hargrove also testified that he lied to the detective in the typed statement, although he freely admitted signing it and certifying that it was true when he gave it. Further, Hargrove admitted that his daughter had "all this knowledge about sex that little girls don't have unless they've lived it." Hargrove "wondered where it had [come] from."

The victim's foster mother, who lives in Virginia, testified that the victim told her twice about Hargrove's sexual abuse. On one occasion, Hargrove had entered the victim's unlocked bedroom. She was sitting on the floor. He threw her down, held her by the arms, pulled up her nightshirt, and stuck his penis into her vagina.

The victim was called as the court's witness. Hargrove's counsel attempted to question the victim about her statement to O'Donnell, but the victim could not recall what she said. Later, counsel asked her: "You also told some folks on three different occasions ... that your daddy did some things to you, didn't you?" The child replied, "Yes, sir." Apparently the child broke down, because the court called a brief recess to allow the child to collect herself. When cross-examination continued, the child testified that everything she had said in Virginia, to her foster mother and her social worker, was true. The victim also testified that Hargrove came into the house with red eyes; held her hands down; and put his penis into her vagina. Afterward, she ran into the closet and did not come out until she was sure he was gone. Upon further cross-examination, the child testified that it happened just one time, and in Savannah. The child was then questioned by the state. She testified that she told the social worker the truth; and that whenever her father did something to her, he told her not to tell anyone.

1. In his first two enumerated errors, Hargrove argues that his motion for a directed verdict should have been granted at least as to five counts of the indictment because the verdicts were based solely on his uncorroborated confession. Hargrove claims the evidence shows at most two improper sexual acts. We disagree.

"While a confession, standing alone, is not sufficient to justify a conviction, a free and voluntary confession of guilt by the accused is direct evidence of the highest character and is sufficient to authorize a conviction when corroborated by proof of the corpus delicti."[3] Moreover, "[t]he corroborating evidence or circumstances need not connect the defendant definitely with the perpetration of the offense. Corroboration in any material particular satisfies the requirements of the law."[4] "The amount of evidence necessary to corroborate a confession is for the jury to decide, as it may consider the confession along with other facts and circumstances independent and separate from it in determining whether or not the corpus delicti has been

---

[3] (Citations and punctuation omitted.) *Morris v. State,* 274 Ga. App. 41, 42 (1) (616 SE2d 829) (2005); see also OCGA § 24-3-53.

[4] (Punctuation and footnote omitted.) *Cummings v. State,* 272 Ga. App. 886, 889 (3) (614 SE2d 121) (2005).

established to their satisfaction."[5] In the case at bar, the testimony of the social worker along with the victim's audiotaped statement, in which she described how Hargrove "would stick his private part" in her vagina and "would" put his penis in her "behind," her trial testimony that she told the social worker the truth, and evidence that the victim's behavior was typical of an abused child, was sufficient for the jury to find that the victim had been abused on numerous occasions. The evidence corresponded to Hargrove's confession and was sufficient to establish the corpus delicti, i.e., that the crimes actually occurred.[6] The evidence was more than enough to corroborate Hargrove's confession.

2. Hargrove next complains that the state presented insufficient evidence to establish venue in Liberty County. Venue is an essential element of every offense that must be proved beyond a reasonable doubt.[7] In the case at bar, Hargrove's confession identifies the specific address where he committed each act of molestation for which he was charged. In his confession, Hargrove states that the address is his parents' home in Riceboro, where he moved after he and his wife separated. The detective testified that the address was located in Liberty County. The jury was fully and properly charged on venue.

Despite his confession and the court's charge, Hargrove argues that venue was not proved beyond a reasonable doubt because the victim's statement and testimony would have authorized the jury to find that Hargrove molested her in Chatham County. This argument is meritless. "As with all other essential elements of a crime, weighing the evidence of venue is a function of the jury, not of this Court."[8] "Likewise, the credibility of a witness, even on the issue of venue, is to be determined by the jury."[9] Finally, "[a] jury is entitled to believe part of a witness' testimony and discount or disregard the rest of the witness' testimony."[10] We will not reweigh the evidence or otherwise usurp the jury's function. Venue was properly laid in Liberty County.

3. Hargrove complains that the trial court erred in allowing O'Donnell, the social worker, to bolster the victim's credibility. When laying the foundation for the introduction of the audiotape of the child's hearsay statement, the prosecutor asked O'Donnell whether she had coached the child or promised her anything. In addition the

---

[5] (Citations and punctuation omitted.) *McCloud v. State*, 210 Ga. App. 69 (1) (435 SE2d 281) (1993).

[6] See *Bigham v. State*, 222 Ga. App. 353, 354 (474 SE2d 254) (1996).

[7] *Jones v. State*, 272 Ga. 900, 901 (2) (537 SE2d 80) (2000).

[8] (Punctuation and footnote omitted.) *Olarte v. State*, 273 Ga. App. 96 (1) (614 SE2d 213) (2005).

[9] (Footnote omitted.) *Brown v. State*, 287 Ga. App. 857, 859 (2) (652 SE2d 807) (2007).

[10] (Footnote omitted.) *Shue v. State*, 251 Ga. App. 50, 51 (1) (553 SE2d 348) (2001).

prosecutor asked O'Donnell, "did you observe her general credibility and make an assessment of it?" O'Donnell replied:

Absolutely. [The victim] and I talked about telling the truth versus telling a lie. We do that with all of our children before we start our interview process. . . . [W]e would ask certain questions about, "If I told you the sky was green is that telling the truth or is that telling a lie?" And [the victim] would answer those kind of questions. And we . . . go through that process, so that I would know, as an interviewer, that she was understanding the truth and a lie.

Hargrove contends that the witness's response constituted improper bolstering of the victim's veracity and that a hearing should have been held outside of the jury's presence to determine the reliability of the victim's out-of-court statement pursuant to OCGA § 24-3-16.[11] Hargrove has waived this claim of error, however, by failing to object at trial to the social worker's testimony. "It is well-settled in this state that it is too late to urge objections to the admission of evidence after it has been admitted without objection. It is necessary to object to evidence at the time it is actually offered, and failure to do so amounts to a waiver of any objection which might have been raised."[12]

4. Hargrove argues that his trial counsel rendered constitutionally ineffective assistance by failing to object to the social worker's testimony and by agreeing to proceed to trial with 11 jurors. We disagree.

To establish ineffectiveness, a defendant must prove that his trial counsel's performance was deficient and the deficiency prejudiced his defense to the extent that there was a reasonable probability the result of the trial would have been different but for defense counsel's unprofessional deficiencies.[13]

"[A] strong presumption exists that trial counsel performed within the wide range of reasonable professional assistance."[14]

(a) At the new trial hearing, trial counsel testified that he made a strategic decision not to object to the social worker's testimony because the victim was the key witness; she was going to testify; and

---

[11] See *Roberson v. State*, 241 Ga. App. 226 (526 SE2d 428) (1999) (physical precedent only).

[12] (Citation and punctuation omitted.) *Davitt v. State*, 232 Ga. App. 427 (1) (502 SE2d 300) (1998).

[13] (Citations omitted.) *Cline v. State*, 224 Ga. App. 235, 237-238 (4) (480 SE2d 269) (1997).

[14] (Citation omitted.) *Leonard v. State*, 279 Ga. App. 192, 194 (2) (630 SE2d 804) (2006).

counsel had determined that he had a good chance of impeaching her credibility by getting her to admit that she had been molested by her older sister's boyfriend.

> It is well settled that the credibility of a witness is to be determined by the jury, and the credibility of a victim may not be bolstered by the testimony of another witness; nonetheless, the law does not mandate that trial counsel object when the prosecutor poses a question that allegedly violates that rule. The decision of whether to interpose certain objections is a matter of trial strategy and tactics.[15]

Furthermore, such "decisions . . . are within the lawyer's exclusive province and do not amount to ineffective assistance of counsel."[16] As counsel's decision was strategic and was not patently unreasonable, this claim of ineffectiveness fails.

(b) Attrition in the members of the jury led the trial court to ask permission from both sides to proceed with 11 jurors. Both sides agreed. The court specifically inquired, on the record, if Hargrove had any problem with going forward with 11 jurors, and Hargrove said, "No." At the new trial hearing, trial counsel testified that he acquiesced in this procedure because it has been his standard practice in twenty-two years as a public defender to use as few as ten jurors, and he feels very comfortable with a smaller jury because it can be easier to convince fewer jurors of the existence of a reasonable doubt. Although, as counsel admitted, the state has to prove guilt, and, as Hargrove points out, it may be harder to convince 12 jurors of guilt than 11, this claim of error provides no basis for reversal. First, the trial court followed the "better practice to inquire directly of a defendant if he agrees with [the] tactical decision[ ]" to proceed with an 11-person jury.[17] Second, this type of tactical decision by counsel in consultation with his client is virtually unchallengeable.[18]

In sum, in the case at bar, we cannot say that "trial counsel's conduct so undermined the proper functioning of the adversarial

---

[15] (Punctuation and footnotes omitted.) *Boyt v. State*, 286 Ga. App. 460, 463 (2) (b) (649 SE2d 589) (2007); *Powell v. State*, 272 Ga. App. 628, 631-632 (2) (c) (612 SE2d 916) (2005). See also *Johnson v. State*, 274 Ga. App. 69, 71-72 (1) (616 SE2d 848) (2005) (bolstering testimony was not prejudicial where child/victim recounted her allegations of abuse to other witnesses, her videotaped interview was played for the jury, and she testified at trial, so "[defense counsel] had the opportunity to test her memory and credibility before the jury") (citation and punctuation omitted).

[16] (Footnote omitted.) *Howard v. State*, 252 Ga. App. 465, 468 (1) (556 SE2d 536) (2001).

[17] *Young v. State*, 191 Ga. App. 651, 654 (3) (382 SE2d 642) (1989).

[18] *Snelson v. State*, 286 Ga. App. 203, 204 (648 SE2d 647) (2007).

process that the trial could not reliably have produced a just result."[19] Accordingly, we affirm the trial court's finding that Hargrove did not receive ineffective assistance of counsel.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED JANUARY 29, 2008

*Craig T. Pearson*, for appellant.

*Tom Durden*, District Attorney, *Jon Hope*, Assistant District Attorney, for appellee.

---

[19] (Footnote omitted.) *Boyt*, supra at 462 (2).