**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 2, 2015**

# In the Court of Appeals of Georgia

A14A1900. JACKSON v. THE STATE.

McMILLIAN, Judge.

McKenzie Sharrod Jackson was convicted by a jury of two counts of child molestation and sentenced to concurrent ten year terms. He appeals, arguing that his conviction was based solely on his uncorroborated confession and therefore must be reversed.[1] We disagree and affirm.

---

[1] Although Jackson frames his enumerations in terms of the denial of his motion for directed verdict, the denial of his motion for new trial based on the sufficiency of the evidence, and a challenge to the sufficiency of the evidence under *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979), we consider his contentions together since they assert the same issues and, in this instance, invoke the same standard. E.g., *Hargrove v. State*, 289 Ga. App. 363 (657 SE2d 282) (2008) (standard for review of denial of motion for directed verdict is the same as that used to assess the sufficiency of the evidence).

The record shows that on the night of the incident, the victims, K. F. and H. R., who were both fourteen at the time, were home alone at K. F.'s mother's house while the mother was working at an overnight home health care job. K. F.'s mother called the house the next morning to wake the girls, but no one answered so she left work and drove to the house. As was her habit, she checked the caller ID on her home phone when she arrived at her house and saw that a call had come in late the night before from a number she did not recognize. K. F.'s mother called back the number, and Jackson,[2] whom she knew from around the neighborhood, answered the phone and told her that he had called looking for her. However, she found this suspicious since Jackson had never called her before, so she took her daughter's phone and checked her messages after she left for school. She saw that Jackson and her daughter had been texting back and forth the night before, and she discerned from one of the text messages that Jackson had arrived at her house around 1:00 a.m. on February 23, 2010.

Both K. F. and H. R. were subsequently interviewed by a forensic interviewer from Patticake House Children's Advocacy Center. The victims told the interviewer that Jackson came to K. F.'s mother's house between 1:00 and 1:30 a.m. on February

_____

[2] Jackson was twenty-eight years old at the time.

2

23, 2010. Jackson, K. F., and H. R. spent a brief time talking in the living room, and then Jackson and K. F. went into one of the bedrooms and had sexual intercourse. Jackson left that bedroom and went into another bedroom where H. R. was located, and he put on a condom and had sexual intercourse with H. R. K. F. and H. R. also told the interviewer that H. R. had semen on her after she had intercourse with Jackson.

Jackson was interviewed by police less than 24 hours after the incident and again the next day. The first time he was interviewed, Jackson admitted to police that he went to the house where the girls were staying, but he denied any type of sexual conduct occurred while he was there. However, the next day Jackson gave another statement to police, in which he admitted to engaging in sexual conduct with both victims. During this interview, Jackson told police that shortly after he arrived, he and K. F. went into one of the bedrooms and she masturbated him until he "leaked fluids," and that he then went into another bedroom with H. R. and she masturbated him until he ejaculated. This statement was reduced to writing and introduced into evidence at trial.

Jackson was placed under arrest and subsequently charged with two counts of statutory rape (one involving each victim) and numerous counts of child molestation.

3

Both victims testified at trial and although their testimony differed in some respects from their pre-trial statements,[3] both victims testified that Jackson came to the house where they were staying in the early morning hours of February 23, 2010, after they had been talking and texting for several hours. The victims said that Jackson first had sex with K. F. in one of the bedrooms, and that he left that room and went into a different bedroom with H. R., and had sex with her until he ejaculated. Neither victim testified that she masturbated Jackson, and K. F. specifically denied that she touched Jackson's penis. However, Jackson, who testified at trial and read his incriminating statement to the jury during cross-examination by the State, maintained his version of events accurately portrayed what happened that night.

A jury convicted Jackson of Count 7, which alleged that he had K. F. touch his penis with her hand, and Count 8, which alleged that he had H. R. touch his penis with her hand, and found him not guilty of the remaining charges. Jackson appeals, arguing that his conviction must be reversed because the jury's verdict was based solely on his uncorroborated confession.

---

[3] These statements were played for the jury at trial. One instance of a discrepancy between K. F.'s taped interview and her trial testimony concerned whether she and Jackson had sex in her bedroom or her mother's bedroom.

Under former OCGA § 24-3-53,[4] "confessions are to be received with care," and must be corroborated. "Nevertheless, a confession, freely and voluntarily made, is evidence of the highest character, and any corroboration thereof will be sufficient to sustain a conviction." (Citation and punctuation omitted.) *Merritt v. State*, 292 Ga. 327, 329 (1) (737 SE2d 673) (2013). Further, "the corroborating evidence or circumstances need not connect the defendant definitely with the perpetration of the offense. Corroboration in any material particular satisfies the requirements of the law, [and t]he amount of evidence necessary to corroborate a confession is for the jury to decide." (Citation and punctuation omitted.) *Hargrove v. State*, 289 Ga. App. 363, 365 (1) (657 SE2d 282) (2008). *Rogers v. State*, 290 Ga. 401, 403 (1) (721 SE2d 864) (2012) ("A confession need be corroborated only by any particular, not every particular.") (citation and punctuation omitted), disapproved on other grounds, *State v. Sims*, ___ Ga. ___ (2) (a) (Case No. S14A1657, decided February 2, 2015). When a jury, properly charged, finds that a confession, freely and voluntarily given, "is corroborated, it need not find proof of guilt beyond a reasonable doubt from evidence

---

[4] This case was tried in August 2012, and thus the new Evidence Code does not apply. See Ga. L. 2011, pp. 99, 214 § 101. And in any event, the provision of former OCGA § 24-3-53 was carried over without substantial change to the new Evidence Code, where it may be found at OCGA § 24-8-823.

separate from and wholly independent of the confession, and it instead may consider the confession along with other facts and circumstances independent of and separate from it." (Citation and punctuation omitted.) *Merritt*, 292 Ga. at 329-330.

In this case, Jackson's confession was sufficiently corroborated by the evidence showing that Jackson engaged in a series of text messages with the teenage victims beginning late on the night of February 22, 2010, which continued into the early morning hours of February 23, 2010, and culminated in Jackson arriving at the house where K. F. and H. R. were staying between 1:00 and 1:30 a.m. Jackson and the victims talked a short while in the living room, and then he and K. F. went into a bedroom together and engaged in sexual activity. Jackson then left that bedroom and went into another bedroom with H. R., and engaged in sexual activity with her until he ejaculated.

Despite this evidence, Jackson argues his confession was not sufficiently corroborated because neither victim testified that they touched his penis and K. F. specifically denied this conduct took place. However, as we have explained on numerous occasions, "it is the role of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient." (Citation and

punctuation omitted). *Merritt*, 292 Ga. at 330 (1). In this case, Jackson's statement to police and his trial testimony were sufficiently corroborated in numerous particulars, and the evidence presented at trial was sufficient under the standard of *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979). *Smith v. State*, 295 Ga. 283, 287 (1) (b) (ii) (759 SE2d 520) (2014); *Merritt*, 292 Ga. at 330 (1); *Hargrove,* 289 Ga. App. at 366 (1).

*Judgment affirmed. Phipps, C. J., and Ellington, P. J., concur.*