637 S.E.2d 790 (2006)
ANDERSON
v.
The STATE.
No. A06A2240.
Court of Appeals of Georgia.
October 23, 2006.
*791 W. Keith Barber, Statesboro, for appellant.
Richard Mallard, District Attorney, for appellee.
BLACKBURN, Presiding Judge.
Following a jury trial, John Darrell Anderson was convicted of one count each of aggravated child molestation,[1] attempted aggravated sodomy,[2] statutory rape,[3] kidnapping,[4] and enticing a child for indecent purposes.[5] He appeals his convictions and the denial of his motion for new trial, (1) challenging *792 the sufficiency of the evidence and contending that the trial court erred in (2) improperly charging the jury as to aggravated child molestation and (3) denying his claims of ineffective assistance of counsel. For the reasons set forth below, we affirm.
1. We first address Anderson's contention that the evidence was insufficient to support his conviction. "On appeal from a criminal conviction, the evidence must be construed in a light most favorable to the verdict, and [Anderson] no longer enjoys a presumption of innocence." Berry v. State.[6] When evaluating the sufficiency of the evidence to support a conviction, we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt. Jackson v. Virginia.[7]
So viewed, the record shows that in early November 1997, then seven-year-old C.J. informed her mother that Anderson, a friend of her mother who had been living with them for the past several months, had inappropriately touched her. However, when her mother became upset and began questioning her further, C.J. recanted the accusation. Confused and still upset, C.J.'s mother had her sister-in-law (C.J.'s aunt), who lived in the same mobile home park and often took care of C.J., take C.J. to stay with her that night. The next morning, the aunt asked C.J. to tell her the truth about whether Anderson had touched her. C.J. responded that he had, and more specifically that Anderson had put his privates inside her privates and had also tried to put his privates in her behind. The aunt then told C.J.'s mother what had happened and suggested that C.J. be taken to the hospital for an examination. The following day, C.J.'s mother took her to the hospital where she was examined by a nurse practitioner who found evidence consistent with sexual molestation.
Anderson was arrested and indicted on one count each of aggravated child molestation, attempted aggravated sodomy, statutory rape, kidnapping, and enticing a child for indecent purposes. At trial, C.J. testified that one night while she was trying to go to sleep, Anderson woke her up, carried her into his bedroom, and would not let her leave. He removed her clothes, put his privates inside her privates, and also tried to put his privates in her behind. When he was finished, he let her leave but told her not to tell anyone about what had happened. C.J.'s mother and her aunt also testified as to what C.J. told them had happened. The investigating police officer testified as to what C.J. told him about the incident and also played a videotaped interview with C.J., taken a few days after she had revealed to her mother and aunt that she had been molested. In addition, the nurse practitioner who examined C.J. testified that the exam revealed that the girl's hymenal ring was not intact and that she had suffered a tear in the perineum, findings which were consistent with C.J.'s account of the sexual abuse. At the trial's conclusion, Anderson was found guilty on all five counts of the indictment. He filed a motion for new trial, which was amended twice and denied after a hearing. This appeal followed.
Anderson contends that the evidence was insufficient to support his conviction. We disagree. "A person commits the offense of aggravated child molestation when such person commits an offense of child molestation which act physically injures the child or involves an act of sodomy."[8] OCGA § 16-6-4(c). The offense of attempted aggravated sodomy is when a person with the intent to commit sodomy performs any act constituting a substantial step toward the commission of sodomy with force and against the will of the other person or with a person less than ten years of age.[9] "A person commits the offense of statutory rape when he or she engages in sexual intercourse with any person *793 under the age of 16 years and not his or her spouse."[10] In this case, C.J. testified that Anderson put his privates inside her privates and attempted to put his privates in her behind. Additionally, the nurse practitioner testified that the physical exam of C.J. indicated injuries consistent with C.J.'s testimony. Thus, there was sufficient evidence to support Anderson's convictions on Count 1 (aggravated child molestation), Count 2 (attempted aggravated sodomy), and Count 3 (statutory rape). See Iles v. State;[11]Mann v. State;[12]Dorsey v. State.[13]
"A person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will."[14] "A person commits the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts."[15] Here, C.J. testified that Anderson carried her into his bedroom and would not let her leave until after he had sexually abused her. Thus, there was sufficient evidence to support Anderson's convictions on Count 4 (enticing a child for indecent purposes) and Count 5 (kidnapping). See Pickett v. State.[16]
2. Anderson contends that the trial court erred in charging the entirety of OCGA § 16-6-4(c), given that the indictment charged him with aggravated child molestation only by causing a physical injury to the child. Specifically, he argues that because the State introduced evidence of attempted aggravated sodomy, in addition to evidence that he caused a physical injury to C.J., charging on the entirety of OCGA § 16-6-4(c) raised the possibility that the jury believed he committed aggravated child molestation in a manner not charged in the indictment. See Dukes v. State[17] (jury instructions may not mislead jury into convicting defendant of crime in way other than that charged in the indictment).
We first note that Anderson failed to object to any of the trial court's charges, including the charge on the definition of aggravated child molestation. "Generally, failure to object to a jury charge in a criminal case constitutes a waiver, except, under OCGA § 5-5-24(c), where there has been a substantial error in the charge which was harmful as a matter of law." Jones v. State.[18] Although charging the jury on the entirety of OCGA § 16-6-4(c) when the indictment charged that the crime was committed in one specific manner does constitute error, it is not reversible error "unless a reasonable possibility exists that the jury's finding of guilty was based on the method not charged." (Punctuation omitted.) Robertson v. State.[19]
Viewing the charge here as a whole, it is highly unlikely that the jury was misled by the portion of the charge defining OCGA § 16-6-4(c) in its entirety. The court read each specific count of the indictment to the jury, and the indictment itself was sent out with the jury for review during deliberations. The court also instructed that "[t]he burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime beyond a reasonable doubt." Under these circumstances, we discern no reasonable possibility that the jury was misled and convicted Anderson of aggravated child molestation based on an act of sodomy not alleged in the *794 indictment. See Robertson, supra 278 Ga. at 381(5), 629 S.E.2d 79; Holloway v. State[20] (reading of indictment, providing jury with indictment during deliberations, and instructing jury that every allegation of indictment must be proven beyond reasonable doubt removed any danger that jury was misled by overbroad jury instruction on aggravated child molestation); Joiner v. State[21] (reading of indictment, instructing jury that the State had the burden of proving every material allegation, and instructing jury that it could convict on aggravated child molestation only upon finding beyond a reasonable doubt that offense was committed as alleged removed danger that jury would convict defendant based on facts not charged in indictment). Accordingly, the error of charging OCGA § 16-6-4(c) in its entirety was harmless.
3. In his final two enumerations of error, Anderson contends that the trial court erred in denying his motion for new trial based on what he alleged to be two instances of ineffective assistance of counsel. Specifically, Anderson argues that his trial counsel was ineffective in (a) failing to object to the testimony of C.J.'s aunt, which impermissibly bolstered C.J.'s credibility, and (b) failing to request that a portion of C.J.'s videotaped interview, in which she mentioned Anderson's marijuana use, be redacted.
In light of the fact that Georgia does not recognize the cumulative error doctrine, we will discuss each claim of ineffective assistance separately. See Fitz v. State.[22] To establish ineffective assistance of counsel under Strickland v. Washington,[23] a criminal defendant must prove (1) that his trial counsel's performance was deficient, and (2) that counsel's deficiency so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for the deficiency. See Mency v. State.[24] "[A] court need not determine whether trial counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiency." Walker v. State.[25] Furthermore, we will not reverse a trial court's findings regarding either the deficiency or prejudice prong of the Strickland test unless clearly erroneous. Rose v. State.[26]
(a) Anderson contends that his trial counsel should have objected when C.J.'s aunt impermissibly bolstered C.J.'s credibility. At trial, following testimony in which C.J.'s aunt recounted how C.J. told her about being sexually abused and how this upset her, the State asked: "So you believe what she told you?" The aunt responded: "Oh, yeah." It is well established that "the credibility of a witness is a matter for the jury, and a witness'[s] credibility may not be bolstered by the opinion of another witness as to whether the witness is telling the truth." Branesky v. State.[27]
Even though the testimony of C.J.'s aunt constituted improper bolstering, Anderson has failed to prove that the testimony so prejudiced his defense as to affect the outcome of his trial. See Frazier v. State.[28] The allegedly impermissible testimony consisted of the aunt's one response to a question posed by the State that occurred during the course of a day-long trial with multiple witnesses. In addition, C.J.'s description of the sexual abuse remained consistent from the time when she informed her aunt of the details, to when she was interviewed by the investigating officer, as well as the nurse practitioner, and to when she testified at *795 trial. Furthermore, Anderson had a full opportunity to test C.J.'s credibility during cross-examination. Given these circumstances, there is no reasonable probability that the results of Anderson's trial would have been different absent the aunt's impermissible testimony. See id.
(b) Anderson contends that his trial counsel was ineffective in failing to request that the portion of C.J.'s videotaped interview with the police, in which she mentioned Anderson's marijuana use, be redacted, arguing that such statements impermissibly put his character into issue. "While it is generally true that the defendant's character cannot be put in issue in a criminal case unless the defendant chooses to put character in issue, material evidence does not become inadmissible simply because it incidentally places the defendant's character in issue." Parker v. State.[29]
Here, the State introduced into evidence and played the investigating officer's videotaped interview of C.J. recounting the sexual abuse. To allow the jury to more easily follow the video, the trial court also allowed the jury to review transcripts of the interview as it was being played. During the interview, in responding to the officer's question as to whether Anderson worked during the day, C.J. stated that he did not work, but rather hung around the house with his friends smoking "weed," "cigarettes," and "cigars." Anderson's trial counsel did not object to the videotape's admissibility or ask that it be redacted, but he did request that neither the videotape nor the transcript be allowed to go out with the jury during deliberations. The court agreed.
Because the videotape was relevant as evidence of the sexual abuse, as well as C.J.'s consistent account of that abuse, "the entire [videotape] was admissible even though certain comments may have incidentally placed [Anderson's] character in issue." Boykin v. State.[30] Moreover, in light of the evidence in support of Anderson's conviction, he cannot show a reasonable probability that absent the alleged error in the admission of C.J.'s testimony regarding his past drug use, the results of his trial would have been different. See Wood v. State.[31] Accordingly, the trial court did not clearly err in finding that the performance of Anderson's trial counsel was neither deficient nor prejudicial.
Judgment affirmed.
MIKELL and ADAMS, JJ., concur.
NOTES
[1] OCGA § 16-6-4(c).
[2] OCGA § 16-6-2(a).
[3] OCGA § 16-6-3.
[4] OCGA § 16-5-40.
[5] OCGA § 16-6-5.
[6] Berry v. State, 274 Ga.App. 831(1), 619 S.E.2d 339 (2005).
[7] Jackson v. Virginia, 443 U.S. 307, 319(III)(B), 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
[8] "Sodomy" is defined as a "sexual act involving the sex organs of one person and the mouth or anus of another." OCGA § 16-6-2(a).
[9] OCGA §§ 16-4-1; 16-6-2(a).
[10] OCGA § 16-6-3(a).
[11] Iles v. State, 278 Ga.App. 895, 896(1), 630 S.E.2d 148 (2006).
[12] Mann v. State, 263 Ga.App. 131, 132(1), 587 S.E.2d 288 (2003).
[13] Dorsey v. State, 265 Ga.App. 404, 405(1), 593 S.E.2d 945 (2004).
[14] OCGA § 16-5-40(a).
[15] OCGA § 16-6-5(a).
[16] Pickett v. State, 271 Ga.App. 250, 252(1), 609 S.E.2d 181 (2005).
[17] Dukes v. State, 265 Ga. 422, 423, 457 S.E.2d 556 (1995).
[18] Jones v. State, 252 Ga.App. 332, 334(2)(a), 556 S.E.2d 238 (2001).
[19] Robertson v. State, 278 Ga.App. 376, 380(5), 629 S.E.2d 79 (2006).
[20] Holloway v. State, 278 Ga.App. 709, 714-715(5), 629 S.E.2d 447 (2006).
[21] Joiner v. State, 257 Ga.App. 375, 376-377(2), 571 S.E.2d 430 (2002).
[22] Fitz v. State, 275 Ga.App. 817, 824-825(4), 622 S.E.2d 46 (2005).
[23] Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
[24] Mency v. State, 228 Ga.App. 640, 642(2), 492 S.E.2d 692 (1997).
[25] Walker v. State, 268 Ga.App. 669, 673(4)(a), 602 S.E.2d 351 (2004).
[26] Rose v. State, 258 Ga.App. 232, 234-235(2), 573 S.E.2d 465 (2002).
[27] Branesky v. State, 262 Ga.App. 33, 36(3)(a), 584 S.E.2d 669 (2003).
[28] Frazier v. State, 278 Ga.App. 685, 691(3)(a), 629 S.E.2d 568 (2006).
[29] Parker v. State, 244 Ga.App. 419, 423(6), 535 S.E.2d 795 (2000).
[30] Boykin v. State, 264 Ga.App. 836, 841-842(5), 592 S.E.2d 426 (2003).
[31] Wood v. State, 264 Ga.App. 787, 789(1)(a), 592 S.E.2d 455 (2003).