## A10A1917. GREGOIRE v. THE STATE.
### (711 SE2d 306)

BARNES, Presiding Judge.

Antonio Gregoire was charged with one count of aggravated sexual battery, two counts of aggravated child molestation, and three counts of child molestation, involving boys who were then two and three years old. The jury found him not guilty of aggravated sexual battery or either count of aggravated child molestation, and guilty of all three child molestation counts. On appeal, Gregoire contends that the trial court erred in allowing witnesses to testify that they believed the victims, and that his trial counsel was ineffective for raising or not objecting to this line of testimony. For the reasons that follow, we affirm the convictions.

Viewing the evidence on appeal in the light most favorable to the verdict on the child molestation counts, *Brown v. State*, 293 Ga. App. 633 (667 SE2d 899) (2008), the evidence at trial established that the victims in this case were two and three when the offenses occurred. Gregoire, who is the boys' uncle, was 17 at the time. The father of the

younger boy reported to DFCS that the children had made an outcry, and this investigation ensued. The father testified that he had asked the older boy why he was being mean to his brother, and the boy responded by moving his hips and saying "This is what [Gregoire] does to me." The younger boy then said Gregoire had put lotion in his "boo-boo" (a word he used for his buttocks) and put his "winkie" (a word he used for penis) in his "boo-boo," and that it had hurt. At trial, the boys' mother testified that the older boy spontaneously told her that Gregoire had put lotion on his buttocks and then lay on top of him. In particular, the mother recounted:

> The words . . . he used was Antonio told him to pull his pants down. He said, no. He said, if you don't pull them down, I'm going to pull them down. And so Antonio pulled his pants down, and he put lotion on him, and he said he laid on top of him. . . . And then he wiped it off of him. He wiped him off afterwards.

The mother testified that when she asked the older boy to show her what Gregoire had done, "[h]e just laid on the ground and did the humping motion." The younger boy, who was also in the room, told his mother that Gregoire "did me, too."

An expert in forensic interviews with children testified that the older boy did not want to talk to her, but the younger boy did, and that interview was played for the jury. The boy identified his names for parts of the body and then said that Gregoire put lotion on him, pointing to his buttocks, and that it hurt. The expert testified that, during the conversation, the child corrected her when she said something wrong, which demonstrated that he was trying to be truthful, and had exhibited none of the signs of coaching she described.

Finally, a police investigator specially trained to interview children talked to both boys at their day care center. The older boy, who was then four, stood up, pointed to his genital area, began making "hunching motions" with his hips, and related that he was demonstrating what Gregoire had done to him after he told the boy to pull down his pants. The younger boy, then three, stated that Gregoire had "put lotion in" him, pointing to his buttocks and stating, "in here my bootie." Then asked, "What did he do with a winkie?," the child pointed to his genital area and answered, "He did that on me." Audio recordings of both interviews were played for the jury.

1. Gregoire argues that the trial court committed reversible error "when it allowed the State to elicit testimony on the ultimate issue in this case on four occasions and when it allowed other testimony on the ultimate issue." Because his trial counsel did not

object to this line of questioning at trial, however, Gregoire has waived his right to argue the issue on appeal. See *Machado v. State*, 300 Ga. App. 459, 461 (3) (685 SE2d 428) (2009).

2. Gregoire also contends that his trial counsel was ineffective for failing to object to questions about whether witnesses believed the children or not. To prevail on an ineffectiveness claim, a defendant must establish that counsel's performance was deficient and that the deficient performance was prejudicial to his defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Conaway v. State*, 277 Ga. 422, 424 (2) (589 SE2d 108) (2003). "[T]he question of ineffectiveness, including both the performance and prejudice prongs, is a mixed question of law and fact . . . subject to independent review by the appellate court." *Suggs v. State*, 272 Ga. 85, 87 (4) (526 SE2d 347) (2000). We will affirm a trial court's factual findings and credibility determinations unless they are clearly erroneous. Id. at 88 (4).

To prove deficient performance, a defendant must rebut the strong presumption that trial counsel's conduct fell within the broad range of reasonable professional conduct. *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003). "Trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Punctuation and footnote omitted.) *Gray v. State*, 291 Ga. App. 573, 579 (2) (662 SE2d 339) (2008).

Here, trial counsel explained at the motion for new trial hearing that she and her client could never find a reason for these children to present an intentional, malicious lie about their cousin's actions. Because the defense uncovered no plausible explanation for why the children would be angry at the defendant, the defense was built around the theme that very young children were susceptible to telling stories and misconstruing the facts. From voir dire, when counsel asked if the potential jurors had any experience with toddlers, to closing argument when counsel gave the example of a child who says her mother left her when the mother was actually just late picking her up, counsel's trial strategy was to present a theme that the children in this case were lying unintentionally.

Trial counsel also testified that the victims' mother did not want to prosecute the defendant, who was her sister's son, and that counsel expected the mother "to the best of her ability, to try to be helpful to Mr. Gregoire." The mother testified she did not call the police when the children first made an outcry because Gregoire was her nephew and she was concerned about him going to jail. She continued, "[I]t's a disease and he needs help for it, if it happened." It was at this point that the State asked whether the mother believed

anything had happened to her older son, and she replied, "I have to; I'm his mother." Then subsequently asked why she did not believe her younger son, given that she was his mother as well, the mother responded that she thought the younger son was just saying "me too" at first, and was then coerced by his father into continuing his story.

On cross-examination, trial counsel asked the mother if she remembered telling DFCS that she was not sure anything happened, and she said, yes, regarding her younger son. As to her older son, she testified again that she had to believe him because she was his mother, and thought a child that age could not have made up his story. Counsel then asked if she would agree that a child could misconstrue a situation, not intentionally lying but interpreting the facts incorrectly. While she responded that she could not agree in this situation, the question continued the theme of the defense, that small children sometimes make up stories.

At the new trial hearing, trial counsel recalled that the mother was "very sympathetic" to Gregoire, that she testified as counsel had anticipated she would, and that counsel successfully established evidence as to her doubts about her younger child's story. Counsel asked the forensic interviewer and the investigating police officer about the dangers of suggestive questioning in abuse cases involving children, and the recorded interviews of the children at the day care center were replete with such questions. Further, the strategy must have been at least partially successful, because the jury acquitted Gregoire of the more serious charges of aggravated sexual battery and aggravated child molestation, and only convicted on the three child molestation counts.

The trial court made a factual finding at the hearing that counsel's decision not to object when a witness testified about believing a child's statement was not an unreasonable trial strategy, and noted that the jury acquitted Gregoire of the most serious charges. We must affirm that factual finding unless it is clearly erroneous, *Suggs*, 272 Ga. at 88 (4), and we cannot conclude that trial counsel's strategy in this case was patently unreasonable.

This court has reversed convictions in cases where trial counsel failed to object to bolstering testimony,[1] but not when counsel

---

[1] See, e.g., *Word v. State*, 308 Ga. App. 639 (708 SE2d 623) (2011) (stated trial strategy did not explain failure to object); *Ward v. State*, 304 Ga. App. 517, 527 (5) (a) (696 SE2d 471) (2010) (failure to object inconsistent with stated trial strategy); *Pointer v. State*, 299 Ga. App. 249, 252 (1) (682 SE2d 362) (2009) (no discussion of trial strategy); *Orr v. State*, 262 Ga. App. 125, 129 (3) (584 SE2d 720) (2003) (failure to object due to erroneous interpretation of the law); *Mann v. State*, 252 Ga. App. 70, 72-73 (1) (555 SE2d 527) (2001) (failure to object due to inexperience).

testified reasonably and consistently about the strategic basis for not objecting.[2] In short, these cases are very fact-intensive, which is why we do not substitute our judgment for the trial court's unless the court's decision has no objective support in the record.

In this case, applying the "clearly erroneous" standard to our review, the trial court did not err in concluding that trial counsel's performance was not ineffective. Accordingly, we affirm the convictions.

*Judgment affirmed. Smith, P. J., Blackwell and Dillard, JJ., concur. Miller, P. J., and Phipps, P. J., concur and concur specially. McFadden, J., dissents.*

PHIPPS, Presiding Judge, concurring fully and specially.

I concur fully that Gregoire waived the contention set forth in Division 1 of the majority. I concur specially with the majority's determination in Division 2 that Gregoire has failed to show reversible error in the trial court's conclusion that he was not entitled to a new trial based upon his claim of ineffective assistance of counsel. To prevail on an ineffectiveness claim, pursuant to *Strickland v. Washington*,[3] a defendant must establish that counsel's performance was deficient and that the deficient performance was prejudicial to his defense.[4] The majority has determined that the trial court did not err in concluding that the performance component was not met (and thus did not reach the prejudice component). Because I believe that the record shows that Gregoire satisfied the performance component, but not the prejudice component, I write separately.

Gregoire complains, specifically, that his trial counsel failed to object to four cited instances in which he claims the state elicited testimony that bolstered the credibility of the two boys, B. C. and his younger brother B. T. The first instance cited by Gregoire occurred during direct examination of the boys' mother. The prosecutor asked her, "Did you have any reason not to believe what B. C. was telling you?" She answered, "No, he's my child." The second instance

---

[2] See, e.g., *Ellison v. State*, 296 Ga. App. 752, 755 (2) (a) (675 SE2d 613) (2009) (not objecting to show officer thought he had more evidence than existed is reasonable trial strategy); *Al-Attawy v. State*, 289 Ga. App. 570, 573 (1) (657 SE2d 552) (2008) (not objecting and waiting to impeach on cross-examination is reasonable trial strategy); *Hargrove v. State*, 289 Ga. App. 363, 367-368 (4) (a) (657 SE2d 282) (2008) (failure to object to bolstering by social worker was trial strategy, where counsel thought victim rather than social worker was the "key witness," and believed it probable he could impeach the victim); *Lindo v. State*, 278 Ga. App. 228, 236-237 (4) (b) (628 SE2d 665) (2006) (not objecting and waiting to impeach on cross is effective strategy); *Powell v. State*, 272 Ga. App. 628, 631-632 (2) (c) (612 SE2d 916) (2005) (failure to object to bolstering was mistaken identity).

[3] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[4] *Conaway v. State*, 277 Ga. 422, 424 (2) (589 SE2d 108) (2003).

occurred on redirect examination of the mother. The prosecutor asked the mother: "Okay. And you do believe it happened to [B. C.]?" She responded, "I believe my child. I have to; I'm his mother." The third instance occurred on redirect examination of B. T.'s father. The prosecutor asked, "And do you have any reason to not believe what [B. C. and B. T.] were telling you that day?" He answered, "No, not at all." And the fourth instance cited by Gregoire occurred on redirect examination of the DFCS child protective services investigator assigned to the boys' case. The prosecutor asked, "And did [the mother] say anything in regards to whether she believed the disclosure from her children?" He responded, "She stated that she believed her children."

"A witness, even an expert, can never bolster the credibility of another witness as to whether the witness is telling the truth. Credibility of a witness is not beyond the ken of the jurors but, to the contrary, is a matter solely within the province of the jury."[5] Accordingly, "[t]estimony that another witness believes the victim impermissibly bolsters the credibility of the victim."[6] The trial court attributed the lack of any objection or request for curative measure by Gregoire's lawyer to trial strategy. When Gregoire's trial lawyer was asked at the new trial hearing why she had not objected, she responded, "[P]art of our sort of theory of the case was that these children weren't necessarily lying. But that they were so young at the time, that they may not have been saying things that they believed to be true, but that in fact weren't really — weren't accurate." Gregoire's trial lawyer gave no explanation regarding how not objecting to testimony bolstering the boys' credibility advanced such strategy.

1. *Performance component.* The majority has determined that the "trial court made a factual finding at the hearing that counsel's decision not to object when a witness testified about believing a child's statement was not an unreasonable trial strategy." The majority thus concludes, "applying the 'clearly erroneous' standard to our review, the trial court did not err in concluding that trial counsel's performance was not ineffective." Further, the majority states that trial counsel's "strategy must have been at least partially successful, because the jury acquitted Gregoire of the more serious charges." For the following reasons, I cannot agree with the majority's analysis, nor with the resulting outcome that the prejudice component of the ineffectiveness inquiry need not be addressed.

---

[5] *Manzano v. State*, 282 Ga. 557, 560 (3) (b) (651 SE2d 661) (2007) (citation and punctuation omitted).

[6] *Buice v. State*, 239 Ga. App. 52, 55 (2) (520 SE2d 258) (1999), affirmed on other grounds, 272 Ga. 323 (528 SE2d 788) (2000).

The Court in *Strickland v. Washington* instructed: "both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact."[7] And as reiterated in *Suggs v. State*,[8] "the question of ineffectiveness, including both the performance and prejudice prongs, is a mixed question of law and fact."[9] "Under [that] standard, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[10] "[T]he clearly erroneous standard applies *solely* to the trial court's factual findings and . . . we owe no deference to the trial court's legal conclusions."[11] Contrary to the underpinnings of the majority's analysis, "[w]hether an attorney's trial tactics are reasonable is a question of law, not fact."[12]

The majority has resolved Gregoire's contention by accepting, as a factual matter, that Gregoire's trial lawyer employed some type of strategy. But merely invoking the word "strategy" or "tactics" — even if there is evidence to show that some defensive strategy or tactics were employed — "does not automatically immunize trial counsel against a claim that a tactical decision or strategic maneuver was an unreasonable one no competent attorney would have made under the same circumstances."[13] Nothing in the record supports a conclusion that trial counsel's failure to object to four instances of plainly impermissible testimony that bolstered what was essentially the crux of the state's case was "a *reasonable* decision a competent attorney would have made under the same circumstances."[14] The majority does not explain, nor did Gregoire's trial counsel even claim, that her failure to object was a decision made in advancement of a trial strategy she employed.

Moreover, the majority provides no record support for crediting Gregoire's trial counsel for the not guilty verdicts returned by the jury. "[A]ppellate courts cannot know and should not speculate why a jury acquitted on one offense and convicted on another offense. The reason could be [lack of sufficient evidence,] an error by the jury in

---

[7] *Strickland v. Washington*, supra at 698 (IV).

[8] 272 Ga. 85 (526 SE2d 347) (2000).

[9] Id. at 87 (4).

[10] Id. at 88 (4) (footnote omitted).

[11] Id. (emphasis supplied).

[12] *Jefferson v. Zant*, 263 Ga. 316, 318 (3) (a) (431 SE2d 110) (1993) (punctuation omitted).

[13] *Benham v. State*, 277 Ga. 516, 518 (591 SE2d 824) (2004) ("tactics" and "strategy" provide no talismanic protection against an ineffective assistance of counsel claim). Compare, e.g., *Powell v. State*, 272 Ga. App. 628, 631-632 (2) (c) (612 SE2d 916) (2005) (record supported finding that not objecting to credibility testimony was consistent with defense counsel's trial strategy).

[14] *Benham*, supra (emphasis in original).

its consideration or it could be mistake, compromise, or lenity."[15] Stated another way, it is "imprudent and unworkable" to thus speculate whether, and to what extent, a not guilty verdict factors into a defendant's claim of ineffective assistance of counsel.[16]

Viewed under applicable tests, the record shows that Gregoire's trial counsel's failure to object or otherwise seek curative measure from the trial court amounted to deficient performance.[17] Therefore, contrary to the majority, I believe that the prejudice component of the ineffectiveness inquiry must be addressed.

2. *Prejudice component.*

> The *Strickland* Court set forth the appropriate test for determining prejudice: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[18]

Subjected to this test, the record fails to show that a new trial is warranted.

In analyzing the issue presented here, this court has repeatedly considered whether the jury had evidence, other than the bolstering testimony, from which it could assess the credibility of the person(s) at issue.[19] The record shows that the jury did have such evidence in this case. The boys' accounts of Gregoire's acts remained consistent — to their mother, to B. T.'s father, to a forensic interviewer (as to B. T.), and to the police investigator. The jury was presented with a video recording of B. T.'s forensic interview, as well as audio recordings of both boys' separate interviews with the police investigator. And before these recordings were played, the forensic interviewer testified as an

---

[15] *Turner v. State*, 283 Ga. 17, 20 (2) (655 SE2d 589) (2008) (citation and punctuation omitted).

[16] See generally id.

[17] See *Mann v. State*, 252 Ga. App. 70, 72-73 (1) (555 SE2d 527) (2001).

[18] *Miller v. State*, 285 Ga. 285, 286 (676 SE2d 173) (2009), quoting *Strickland*, supra at 694.

[19] See, e.g., *Carrie v. State*, 298 Ga. App. 55, 64 (7) (679 SE2d 30) (2009) (considering that jury was allowed to form its own assessment of victim's credibility and defendant had opportunity to test victim's credibility in front of the jury); *Al-Attawy v. State*, 289 Ga. App. 570, 573-574 (1) (657 SE2d 552) (2008) (considering that jury had other evidence from which it could assess credibility of victim and victim was subjected to cross-examination); *Anderson v. State*, 282 Ga. App. 58, 62-63 (3) (a) (637 SE2d 790) (2006) (considering that defendant had opportunity to test victim's credibility in front of the jury), overruled in part on other grounds, *Schofield v. Holsey*, 281 Ga. 809, 811-812, n. 1 (642 SE2d 56) (2007); *Frazier v. State*, 278 Ga. App. 685, 691 (3) (a) (629 SE2d 568) (2006) (considering that jury was allowed to form its own assessment of victim's credibility and defendant had an opportunity to test victim's credibility during trial), overruled in part on other grounds, *Schofield*, supra.

expert about proper and improper techniques and procedures for interviewing children of the ages of B. T. and B. C.; about indicia of credibility, including factors such as the age and developmental levels of children; and about the types of language used by young children describing abuse.[20] And the expert testified that, during B. T.'s interview,[21] the child exhibited no sign of having been coached.[22]

The dissent points out that the boys were young at the time of the crimes. However, the dissent overlooks the fact that the jury was presented with the boys' specific ages, and with that evidence, the jury could assess whether, and to what extent, the boys' ages factored into their credibility. The dissent further points out that the boys' credibility was not tested by cross-examination before the jury. But the dissent overlooks the fact that Gregoire had the opportunity to cross-examine the boys, and chose to forgo it. At the outset of the trial, the court specifically asked whether both boys were available to testify at trial. The prosecutor and Gregoire's trial lawyer confirmed that they were so available. Thereafter, neither side called either boy as a trial witness. The decision whether to call a certain witness is a matter of trial strategy and tactics.[23] Gregoire makes no contention that he was not given fair opportunity to cross-examine the boys and fully explore their credibility in the presence of the jury; nor does Gregoire lodge any complaint that his trial lawyer's performance was deficient for not calling either boy to the stand. "We will not speculate or make arguments on [Gregoire's] behalf; to do so would improperly change this court's role from disinterested decision-maker to appellate advocate."[24] We can only conclude, from the circumstances presented by this case, that Gregoire had full and fair opportunity to test the boys' credibility by cross-examination in front of the jury, but as part of his trial strategy and tactics, *elected* not to do so.

While the dissent also points out that there were repeated instances of bolstering testimony, there is no bright line rule regarding any specific number of instances. Moreover, the record reveals that the four instances of bolstering concerned the beliefs of only two individuals — the children's parents. The boys' mother — whose belief of B. C.'s account led to three of the four complained-of

---

[20] See generally *Anthony v. State*, 282 Ga. App. 457, 459 (2) (638 SE2d 877) (2006) (officer's testimony that she was trained to look for "certain behaviors in people who might be making false statements" and that victim had not exhibited any of those behaviors did not impermissibly bolster the victim's credibility).

[21] B. C. was not interviewed by this individual.

[22] See generally *Anthony*, supra.

[23] *Manriquez v. State*, 285 Ga. 880, 881 (2) (684 SE2d 650) (2009).

[24] *Pierce v. State*, 251 Ga. App. 600, 605 (5) (554 SE2d 787) (2001) (footnote omitted).

instances — explained that her belief was based partly on the fact that she was his mother and therefore felt a duty to believe him. Because the jury was thus explicitly apprised that any credibility opinion expressed by the mother was not an unbiased evaluation of the child's veracity, its potential to influence the jury was diminished.[25]

Moreover, the mother testified that, while she had already begun having talks with her boys about their private areas and had told them to tell her if they thought anyone was touching them inappropriately, she had never specifically mentioned to them anyone using lotion on their private areas or lying on top of them; she had no personal knowledge as to how they could have known about what they described. Likewise, B. T.'s father testified that he had not had any "birds and bees" talk with either child and had never talked to them about anything like what they had described. B. T.'s father testified that he had "never heard them talk about sex before or anything of that nature."

Given these circumstances, the record shows no reversible error. As set forth above, the potential for the mother's complained-of credibility opinion to influence the jury was diminished. Furthermore, the jury had evidence, other than the bolstering testimony, from which it could assess the boys' credibility. The jury was presented with a video recording of B. T.'s forensic interview, as well as audio recordings of both boys' separate interviews with the police investigator. Before these recordings were played, the jury was presented expert testimony about proper and improper techniques and procedures for interviewing children as young as B. T. and B. C.; about indicia of credibility, including factors such as the age and developmental levels of children; and about the types of language used by young children describing abuse. And the expert testified that, during B. T.'s interview, the child exhibited no sign of having been coached. In addition, the boys' accounts of Gregoire's acts remained consistent — to their mother, to B. T.'s father, to a forensic interviewer (regarding B. T.), and to the police investigator. And neither the boys' mother nor B. T.'s father had any personal knowledge of how their young children could have known about the sexual acts that they were describing and that B. C. was demonstrating.

Given these circumstances, the record shows that Gregoire failed to establish a reasonable probability that, but for his trial counsel's failure to object to the cited bolstering testimony, the

---

[25] See *Al-Attawy*, supra (the impact of the bolstering testimony was diminished, where bolstering witness retreated from her credibility opinion).

outcome of his trial would have been different.[26]

I am authorized to state that Presiding Judge Miller joins in this opinion.

MCFADDEN, Judge, dissenting.

I disagree with the majority's holding that trial counsel's repeated failures to object to improper bolstering testimony was a reasonable trial strategy. Instead, as explained in Division 1 of the special concurrence, those failures constituted deficient performance, and I therefore fully join in Division 1 of the special concurrence. However, I disagree with the special concurrence's further conclusion that the defense was not prejudiced by that deficiency. Accordingly, I respectfully dissent.

The special concurrence relies on three cases in support of its conclusion that Gregoire has failed to show a reasonable probability that, but for his trial counsel's failure to object to the four instances of testimony, the outcome of his trial would have been different. But those three cases — *Carrie v. State*, 298 Ga. App. 55, 63-64 (7) (679 SE2d 30) (2009), *Al-Attawy v. State*, 289 Ga. App. 570, 572-574 (1) (657 SE2d 552) (2008), and *Frazier v. State*, 278 Ga. App. 685,

---

[26] See *Strickland*, supra; *Carrie*, supra (ineffective assistance of counsel claim based on alleged improper bolstering of victim's credibility by psychologist who interviewed victim failed because requisite prejudice was not demonstrated, where jury was allowed to form its own assessment of victim's credibility, victim's outcry statements had remained consistent, and defendant had opportunity to test victim's credibility in front of the jury); *Al-Attawy*, supra (ineffective assistance of counsel claim based on alleged improper bolstering of victim's credibility by psychologist who interviewed victim failed because requisite prejudice was not demonstrated, where jury had other evidence from which it could assess credibility of victim; state showed child's videotaped statement to jury, state called outcry witnesses, and victim was subjected to cross-examination; also, psychologist discussed various indicia by which a disclosure of abuse may be assessed, and psychologist's retreat from bolstering testimony diminished its impact); *Frazier*, supra (ineffective assistance of counsel claim based on alleged improper bolstering of victim's credibility by counselor who had interviewed victim failed because requisite prejudice was not demonstrated, where jury was allowed to form its own assessment of victim's credibility; victim's videotaped statements in interview with counselor were played during trial, victim's account of sexual abuse remained consistent during her outcries, and defendant had an opportunity to test victim's credibility during trial). Compare cases cited by the dissent: *Mann*, supra at 73-74 (requisite *Strickland* prejudice shown, where the only evidence concerning allegations against defendant came through testimony of victim and outcry witnesses; case hinged on victim's credibility, yet victim's testimony was "far from compelling," victim's outcry statements had varied in material respects, victim's allegations had arisen only after victim found himself in trouble; victim's family members testified that victim had lied previously about other people having abused him; and victim acknowledged that he sometimes blamed wrongdoing on others). The dissent also cites *Pointer v. State*, 299 Ga. App. 249, 252 (1) (682 SE2d 362) (2009), which does not concern testimony by a witness that he or she believed the victim and also reverses conviction based upon an inappropriate standard of review: "trial court's finding that a defendant was afforded effective assistance of counsel must be upheld on appeal unless clearly erroneous" and elsewhere concludes that "it was highly probable that counsel's failure to object to this testimony contributed to the verdict." But see *Suggs*, supra at 87 (4).

690-691 (3) (a) (629 SE2d 568) (2006), overruled in part on other grounds, *Schofield v. Holsey*, 281 Ga. 809 (642 SE2d 56) (2007) — are distinguishable from the instant case. In all three cases, the child victims were significantly older than the toddlers involved in this case, those older victims all testified at trial and their credibility was fully tested during cross-examination by defense counsel. *Carrie*, supra at 64; *Al-Attawy*, supra at 574; *Frazier*, supra at 691. Moreover, those three cases did not involve repeated instances of improper bolstering by state witnesses. In *Carrie*, supra, there was only one improper statement during a six-day trial with two dozen witnesses. Likewise, in *Al-Attawy*, supra at 573-574, there was a single comment of bolstering, from which the witness retreated on cross-examination, "thus diminishing its impact." And in *Frazier*, supra at 691, the contested testimony consisted of "two responses that occurred during the course of a two-day trial with multiple witnesses."

In the instant case, the alleged victims were aged two and three at the time they made their statements accusing Gregoire of molesting them. As the state's own expert testified, forensic interviews of such young children are very difficult because they have short attention spans, they do not understand abstract ideas and they are susceptible to suggestion. The children's own mother even testified that she had thought that the younger child might have been copying what he had heard his older brother say and that he might have been coerced by his father. But because neither of the children testified at trial, their credibility was not tested on cross-examination before the jury. Rather, the jury was left to determine their credibility solely by listening to their taped interviews and by hearing the state's witnesses recount the children's out-of-court statements. I do not fault either party for making the strategic decision not to call the children to testify live. On the contrary, I assume that those decisions were founded on sound evaluations of the evidence, as well as the difficulty of predicting what children this age will say. Those evaluations further illuminate the importance in this case of third-party testimony. Moreover, unlike the single instance of bolstering among twenty-four witnesses in *Carrie*, supra, of the five witnesses who testified in this case, the state elicited improper bolstering testimony from three of them, and did so near the end of its examinations of each of those witnesses.

Here, as in *Mann v. State*, 252 Ga. App. 70, 72 (1) (555 SE2d 527) (2001), in which we reversed a conviction due to counsel's ineffective failure to object to bolstering testimony, the only evidence linking the accused to the alleged crimes arose from the statements of the victims. The evidence of Gregoire's guilt was not overwhelming, and the state's case depended on the credibility of the victims. See id. at

74; *Pointer v. State*, 299 Ga. App. 249, 252 (1) (682 SE2d 362) (2009). Under these circumstances, and considering the combined effect of trial counsel's errors, *Schofield*, supra at 812, n. 1, Gregoire "has met his burden of showing a reasonable probability that the result of his trial would have been different if the [improper bolstering of the victims' credibility] had not been allowed. [Cit.]" *Ward v. State*, 304 Ga. App. 517, 529 (5) (b) (696 SE2d 471) (2010). Accordingly, reversal is required. *Mann*, supra.

DECIDED MARCH 30, 2011 —
RECONSIDERATION DENIED APRIL 14, 2011 — 

*James C. Wyatt*, for appellant.
*T. Joseph Campbell, District Attorney, Shelly D. Faulk, Assistant District Attorney*, for appellee.