## A11A1981. BILLINGTON v. THE STATE.
(722 SE2d 395)

ELLINGTON, Chief Judge.

A Cobb County jury found Ronald Billington guilty beyond a reasonable doubt of aggravated assault, OCGA § 16-5-21 (a) (2) (with an offensive weapon). He appeals from the denial of his motion for new trial, contending that the trial court erred in rejecting his claim that his trial counsel provided ineffective assistance. For the following reasons, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence showed the following facts. Billington and the victim have known each other since 1994, when they started a tumultuous relationship that was punctuated with numerous acts of violence committed by Billington against the victim, episodes that sometimes required the intervention of the police and the courts. After the relationship ended in 1997, the two rarely had contact with one another until 2006, when Billington, who had fallen on hard times, asked the victim for help. In addition to providing other assistance, the victim secured a bank loan in January 2007 to buy a 2003 Monte Carlo so Billington could drive to work. Billington paid a $3,000 down payment on the car and promised to pay off the loan, while the victim remained the car's registered owner. By June 2008, however, Billington was behind in the payments, and the victim feared that the bank was going to repossess the Monte Carlo. After Billington refused to make any more payments on the Monte Carlo or to return the car to the victim so she could sell it, the victim decided to repossess the car herself, sell it, and pay off the bank loan.

At approximately 7:30 p.m. on November 14, 2008, the victim and her brother went to the place where Billington was living, which was located near Highway 41 in Cobb County. Their intention was to avoid a confrontation with Billington by waiting until he was out of sight and then to use the victim's spare key to take the Monte Carlo. They waited until they could not see Billington, but, when they approached the car, he saw them and refused to let them leave with the car. After Billington climbed into the driver's seat, started the car, and tried to drive away, the victim climbed on top of him, put her foot on the brake, and tried to wrestle the key out of the ignition.

---

[1] Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

While they were wrestling over the key, the victim's brother climbed through the passenger side door and tried to shift the car into parking gear. He also called 911 on his cell phone, contemporaneously described the events that followed to the operator, and, later, gave the operator the Monte Carlo's tag number. An audiotape of the 911 call was played for the jury without objection.

When they learned that police officers were on the way, the three of them briefly calmed down, and the victim walked to the front of the Monte Carlo and waited, facing Billington. According to the victim and her brother, Billington suddenly accelerated the car and hit the victim's legs, causing her to be thrown onto the car's hood. The victim then hung onto the car's windshield wipers to keep from falling off while Billington alternately accelerated and braked, trying to "sling" her off of the car. With the victim still clinging to the car, Billington drove out of the parking lot, ran a stop sign, and accelerated toward Highway 41. When traffic prevented Billington from entering the highway without stopping, the victim let go and rolled off the car's hood. Although she was "hurting like crazy," the victim limped back to the parking lot while Billington sped away in the Monte Carlo.

A police officer arrived a few minutes later and interviewed the victim and her brother. The officer noticed that the victim was noticeably shaken, her pants were dirty and wet, her legs were red, and she was limping and appeared to be injured. The officer testified that he was unable to question Billington because he was no longer at the scene and that the five other people in the area at that time told him that they had not seen an altercation. According to the victim's brother, all of the people who were in the parking lot when the incident occurred had left by the time the officer arrived.

Billington was subsequently arrested and charged with committing aggravated assault with an offensive weapon, i.e., the Monte Carlo. At trial, his primary defense was that he never hit the victim with the car and that, instead, she was a manipulative person who had fabricated her allegations. During both opening statements and closing arguments, defense counsel asserted that the victim was trying to use the judicial system to punish Billington; that she had voluntarily climbed onto the hood of the car to prevent Billington from leaving the parking lot; and that any injuries she suffered that night were not caused by him, but were incurred when she negligently decided to cross an uneven ditch at night while walking back to the parking lot after she had climbed off the Monte Carlo.

1. On appeal, Billington contends that he received ineffective assistance of trial counsel when his counsel failed to object to the opinion testimony of the police officer on the basis that it bolstered the credibility of the alleged victim and invaded the province of the

jury by addressing the ultimate issue to be decided at trial.[2]

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984)[.] The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. [As the appellate court, we] accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003). "As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." (Citation and punctuation omitted.) *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001).

The testimony at issue in this case was elicited during the direct examination of the police officer:

> State: Based on your observations and your investigation at the scene, were you able to determine how [the victim] sustained her injuries?
> Officer: Yes, ma'am, based on the witness statements and the appearance of the [victim's] clothing, I determined that [the victim] was struck in the legs by the blue Monte Carlo.[3]

The transcript also shows that, during cross-examination, defense counsel twice elicited the officer's admission that the only information he had about the incident was provided by the victim and her brother. The officer then agreed with counsel's suggestion that it was possible that the five other people the officer had questioned at the scene had not witnessed an altercation because no altercation had, in

---

[2] "[A] witness, even an expert, can never bolster the credibility of another witness as to whether the witness is telling the truth. Credibility of a witness is not beyond the ken of the jurors but, to the contrary, is a matter solely within the province of the jury." (Citation and punctuation omitted.) *Word v. State*, 308 Ga. App. 639, 642 (708 SE2d 623) (2011).

[3] Later, during re-direct, the officer repeated his conclusion, testifying that, although he did not measure the distances that Billington had allegedly traveled with the victim on the car's hood, the lack of such details did not "take[ ] away from the fact that [the victim] was struck by a vehicle." Again, defense counsel did not object.

fact, occurred. In addition, the officer admitted that people have, in the past, lied to him during his investigations and that it was possible that the victim in this case had "faked" her injuries. Finally, the officer admitted that it was possible that Billington had not caused the victim's injuries, but, instead, she had injured herself by walking through a nearby uneven, grassy ditch at night. On re-direct, however, the officer testified that the victim's injuries were consistent with the events she and her brother had described to him and that he had no reason to believe that either of them had fabricated the information they had provided. Ultimately, at the end of the officer's testimony, the trial court instructed the jury that, generally, a witness cannot testify that another witness is telling the truth or is not telling the truth, adding that it was their job to decide witness credibility.[4]

During the hearing on Billington's motion for new trial, trial counsel testified that he did not object to the officer's statements because the officer was not an expert witness and because he believed he would be able to attack the officer's testimony very effectively during cross-examination. Counsel explained that he had previously cross-examined the officer at the probable cause hearing and knew that the officer was relatively inexperienced at the time of the incident, had done no independent investigation of the incident, and had relied completely on what the victim and her brother had told him in reaching his conclusion about the cause of the victim's injuries. Further, counsel opined that, because the officer was not an expert witness, his conclusory statement did not carry much impact with the jury and did not contribute to the verdict in this case. In fact, counsel testified that he had exceeded what he had hoped to accomplish during his cross-examination of the officer at trial.

Thus, counsel's hearing testimony supports a finding that his failure to object to the officer's conclusory statement was the result of a reasonable strategic decision, not deficient performance. "Not objecting to testimony[,] but instead subjecting it to cross-examination[,] may be part of a reasonable trial strategy." (Citation and punctuation omitted.) *Word v. State*, 308 Ga. App. 639, 642 (708 SE2d 623) (2011).[5] See *Warbington v. State*, 281 Ga. 464, 466 (2) (b)

---

[4] The court's jury charge also included, inter alia, instructions regarding the jury's role in judging the credibility of witnesses, resolving conflicts in the evidence, and determining whether a witness has been impeached.

[5] See also *Gregoire v. State*, 309 Ga. App. 309, 312-313 (2) (711 SE2d 306) (2011) ("This [C]ourt has reversed convictions in cases where trial counsel failed to object to bolstering testimony, but not when counsel testified reasonably and consistently about the strategic basis for not objecting." This Court emphasized that "these cases are very fact-intensive, which is why we do not substitute our judgment for the trial court's unless the court's decision has no objective support in the record.") (footnotes omitted).

(640 SE2d 11) (2007) (Trial counsel's strategic decision not to object to the statements at issue because he did not want to emphasize them and he did not believe they were influencing the jury did not amount to ineffective assistance of counsel.); *Al-Attawy v. State*, 289 Ga. App. 570, 573 (1) (657 SE2d 552) (2008). As a result, Billington has failed to meet his burden of proving this ineffective assistance claim. *Watkins v. State*, 289 Ga. 359, 362 (3) (711 SE2d 655) (2011) (In examining a claim of ineffective assistance, this Court "need not address both components of the inquiry if the defendant makes an insufficient showing on one.") (citation and punctuation omitted).

2. Billington also claims that counsel was ineffective for failing to object to numerous statements by the victim that exceeded permissible "prior difficulties" evidence and impermissibly commented on his character. Specifically, he argues that the victim was allowed to testify, without objection, regarding his excessive alcohol consumption and his treatment for alcohol addiction; regarding his "questionable mental status"; that he had argued with police and was arrested following a domestic dispute in 1995; that, in June 2008, he possessed a loaded gun and had threatened to commit suicide; and that he "got out of jail in August [2008]."

Although evidence of the general character of the defendant, including his conduct in other transactions, is usually irrelevant and inadmissible,[6]

> [e]vidence of the defendant's prior acts toward the victim, be it a prior assault, a quarrel, or a threat, is admissible when the defendant is accused of a criminal act against the victim, as the prior acts are evidence of the relationship between the victim and the defendant and may show the defendant's motive, intent, and bent of mind in committing the act against the victim which results in the charges for which the defendant is being prosecuted.

(Citations and punctuation omitted.) *Stallworth v. State*, 303 Ga. App. 767, 769 (695 SE2d 276) (2010). See also *Hampton v. State*, 300 Ga. App. 49 (1) (684 SE2d 118) (2009) ("It is the general rule that if evidence is relevant and material to an issue in a case, it is not inadmissible because it incidentally puts the defendant's character in issue.") (citation and punctuation omitted).

(a) As an initial matter, the record shows that, before trial, defense counsel filed four motions in limine to exclude evidence that there had been prior difficulties between the parties, that Billington

---

[6] OCGA § 24-2-2.

had been arrested in August 2008 on charges that involved the victim, that there was an existing restraining order against him prohibiting any contact with the victim, that he possessed a loaded handgun, and that he had mental problems and had threatened to commit suicide. Immediately prior to trial, the court conducted a hearing on the motions, and it excluded evidence of Billington's 2008 arrest and the restraining order, but admitted the remaining evidence.

"Normally, when a defendant moves in limine for the exclusion of evidence and the trial court, on the record, rules the evidence admissible, the record is preserved and the defendant is not required to object to the evidence during trial." (Citation and punctuation omitted.) *Hampton v. State*, 300 Ga. App. at 50-51 (1). Therefore, Billington's counsel did not have to contemporaneously object to the evidence of the prior difficulties, the loaded handgun, his mental status, or his suicide threat in order to preserve the issues for appeal. Id. Consequently, counsel was not ineffective for failing to raise these objections during trial.

(b) As to whether counsel improperly failed to object to the victim's testimony about Billington's excessive alcohol consumption, his treatment for alcohol addiction, his mental health problems, his suicide threat, his possession of the handgun, or the 1995 incident in which he argued with the police and was arrested, the trial transcript shows that the evidence was part of the res gestae of the numerous incidents of prior difficulties between the parties.[7] The victim also testified that Billington's alcohol abuse caused or contributed to the domestic violence episodes that were instigated by Billington, including the 1995 incident, and that it was the primary reason their relationship ended in 1997. Thus, the evidence was relevant and admissible, even if it incidentally placed Billington's character in issue. See *Jones v. State*, 283 Ga. App. 812, 813-814 (1) (642 SE2d 887) (2007) (A defendant's prior substance abuse is admissible as prior difficulties testimony when it explains the friction in the relationship between the victim and the defendant that led to the crime.); see also *Hampton v. State*, 300 Ga. App. at 49 (1). Consequently, an objection to the evidence would have been futile, and the failure to make a meritless objection to the admission of certain evidence does not constitute deficient performance of counsel. *Wesley v. State*, 286 Ga. 355, 356 (3) (a) (689 SE2d 280) (2010).

(c) Finally, the record shows that counsel made a conscious,

---

[7] Billington does not allege on appeal that the trial court improperly admitted the evidence of prior difficulties between the parties. Further, the record shows that, during the victim's testimony, the trial court gave a limiting instruction to the jury regarding their consideration of the evidence of the prior difficulties.

strategic decision not to object to the evidence at issue after he repeatedly and thoroughly consulted with Billington and they jointly developed a mutually agreeable trial strategy. At the hearing on the motion for new trial, trial counsel specifically testified that he and Billington had communicated very well before and during trial and had decided on a defense that was different from most domestic violence cases. As counsel explained,

> Typically, in a domestic violence case, you don't want the jury to know about any prior[ ] [difficulties]. And this particular case was very different because the alleged victim had worked up here at the [superior court] clerk's office. She knew judges. She knew lawyers. She was very intimately familiar with the court process. And as Mr. Billington would relay information to me, I would go check it out. We met about eight times or so, according to my notes. He wrote me a number of letters, ten or [eleven] letters. And what we decided was, rather than try to hide the past, we would embrace the past because what occurred on a regular basis was [the victim] would file an accusation, she would make a claim against Mr. Billington and then not show up for court, or she would sign an affidavit, or she would make a phone call trying to drop [the] charges. And so what we decided to do was to paint her for really what she is, and that is, a very manipulative person, who used the court system to manipulate Mr. Billington and to get over on him. That was our defense. That was our theory of the case.

Counsel added that another aspect of their defense was to dispute the victim's claim that Billington had hit her with the car by arguing that the victim voluntarily climbed onto the hood to try to prevent him from taking the car. In support of that theory, counsel relied on the recording of the 911 call, the testimony of the victim's brother and the officer, and certain demonstrative evidence, all of which, in his opinion, conflicted to some extent with the victim's version of events. In addition, counsel stressed that he and Billington had agreed to let the victim talk uninterrupted at trial, knowing that "she would talk herself into a hole; that if you give her enough rope, she'll hang herself." According to counsel, this strategy was effective because the victim's testimony "seemed to be very exaggerated. It seemed to be very immature," and many of the things the victim testified about made her look like "an angry, bitter person bent on revenge."

Moreover, during the motion hearing, counsel specifically addressed the evidence of Billington's alcohol abuse and treatment,

stating that, when testifying, the victim "came across as being very unbelievable" and "very disorganized," and appeared to be a very bitter, angry, vengeful person. Counsel said that he did not object because he did not want to highlight the testimony and because he and Billington had decided to be "open and honest" about his alcohol abuse, explaining that

> part of the Ron Billington story . . . [was that] he used to have an alcohol problem, and I anticipated, if he took the stand, he would've testified that he had had an alcohol problem, that all the problems back with [the victim] so many years before had been because of that alcohol problem; that he had sought treatment, gone through rehab, and everything was changed, and that alcohol was no longer a part of his life. . . . [H]e was able to beat alcohol and that's something he's proud of.

According to counsel, until the State had rested its case, it was unclear whether Billington would testify, so "if I had objected when [the victim talked about his alcohol problem or treatment,] but then put Mr. Billington up later and he had said the same thing or something similar, then I felt like that could've looked negative . . . for him."

As for the evidence that Billington had argued with the police and was arrested in the 1995 incident, counsel testified that he and Billington were not worried about that evidence because the case was dismissed after the victim failed to pursue it, so "it was just another example of her just trying to get Mr. Billington in trouble."

Finally, as to the victim's reference to Billington's August 2008 release from jail, counsel explained that he did not object for three reasons: if Billington had testified, he would have testified about the incident; if the victim's parents had testified, the fact of Billington's 2008 arrest and incarceration might have come out anyway during their testimony; and because he did not want to highlight the fact by objecting to it.

At the end of the motion for new trial hearing, the trial court ruled that Billington had failed to meet his burden of showing that his trial counsel's performance had been deficient, because, even though certain evidence had been introduced that might not have been admissible under other circumstances, the trial proceedings were consistent with the trial strategy that Billington and his counsel had followed from the beginning of trial. The record supports

the court's conclusion.[8]

Moreover, the trial court was authorized to conclude that the trial strategy devised by Billington and his counsel was not patently unreasonable under the circumstances presented. "Substantial latitude is given during judicial review of trial counsel's decisions regarding trial strategy." (Punctuation and footnote omitted.) *Moss v. State*, 278 Ga. App. 362, 365 (2) (a) (629 SE2d 5) (2006). Decisions based on counsel's reasonable trial strategy, including what objections to make, do not constitute deficient performance. Id.; *Warbington v. State*, 281 Ga. at 466 (2) (b); *Gregoire v. State*, 309 Ga. App. 309, 311 (2) (711 SE2d 306) (2011) ("Trial tactics and strategy . . . are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them.") (citation and punctuation omitted). Further, "this [C]ourt does not evaluate trial counsel's tactics and strategic decisions in hindsight." (Punctuation and footnote omitted.) *Battise v. State*, 309 Ga. App. 835, 836 (2) (711 SE2d 390) (2011). The fact that Billington and his appellate counsel now disagree with the difficult decisions that were made regarding trial tactics and strategy does not require a finding that Billington received deficient representation amounting to ineffective assistance of counsel. *Warbington v. State*, 281 Ga. at 466 (2) (a); *Espinosa v. State*, 309 Ga. App. 877, 880 (2) (711 SE2d 425) (2011).

*Judgment affirmed. Doyle, P. J., and Miller, J., concur.*

DECIDED JANUARY 25, 2012.

*H. Maddox Kilgore*, for appellant.
*Patrick H. Head, District Attorney, Lynne G. Voelker, Anna G. Cross, Assistant District Attorneys*, for appellee.

---

[8] The court's conclusion is not only supported by counsel's testimony at the motion for new trial hearing, but also by the trial transcript, which shows that, after the victim had given the challenged testimony on direct, the court asked Billington, outside the presence of the jury, whether he was satisfied with counsel's representation. Billington responded, "Absolutely." The court also asked him if he had any concerns that he would like to express regarding his case or his representation, and Billington responded, "Not at this point." The court repeated the questions after the jury began deliberating, and Billington again responded that he was satisfied with counsel's representations and had no concerns that he wanted to discuss with the court.