**SECOND DIVISION**
**HODGES and PIPKIN, J. J.,**
**and SENIOR APPELLATE JUDGE HERBERT E. PHIPPS.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**April 21, 2021**

# In the Court of Appeals of Georgia

A21A0200. PIERRE v. THE STATE.

PHIPPS, Senior Appellate Judge.

A jury found Adam Pierre, III, guilty of family violence simple battery and criminal trespass, but not guilty of family violence battery. Pierre filed a motion for new trial, which he amended four times. Following the trial court's denial of Pierre's motion for new trial, he filed this appeal. On appeal, Pierre contends that he received ineffective assistance of trial counsel in a number of respects. For the following reasons, we affirm Pierre's convictions.

The record shows that Pierre and the victim are married, and, during their tumultuous marriage, Pierre often hit his wife in the face. Two days before the incident at issue, Pierre told the victim he wanted a divorce, so she moved into the bedroom and locked herself in. She also transferred $1,200.00 from the couple's joint

business account to her personal account. On December 12, 2017, Pierre noticed that the victim had transferred the money, and, while the victim was on the phone talking with her daughter, Pierre began banging on the victim's door, demanding that she "open this motherf***ing door." The victim opened the door, and Pierre demanded that she put the money back. When the victim responded that she did not have the money, Pierre said, "I'm going to beat your ass tonight." Pierre grabbed the victim's phone, and, when it would not shut off, he threw it on the bed. The victim backed up to the other side of the bed and begged Pierre not to hit her, but Pierre grabbed her and began to punch her. The victim covered her face with her arm, and she was struck in the arm. She was so afraid that she soiled herself, but Pierre told her he did not care "if [she] shit all over [herself]."

Pierre then grabbed the victim's phone and threw it against the corner of the bed footboard, shattering the screen. Pictures of the broken phone and glass on the carpet were introduced into evidence. Pierre told the victim to get her "shit" and "[g]et the f*** out of my house." As the victim was cleaning herself off, her daughter called Pierre's phone, and Pierre told the daughter that her mother was a thief. The victim yelled for her daughter to call 9-1-1, grabbed some belongings, and left the

house while Pierre shouted at her. She fled to a neighbor's house, where she waited for police to arrive.

The victim's daughter testified that Pierre was physically and emotionally abusive to the victim. According to the daughter, she was on the phone with the victim when she heard the victim scream for Pierre not to hit her. Then the call dropped. The daughter tried to call back the victim several times, but the calls kept going to voicemail, so she dialed 9-1-1. The daughter finally reached Pierre on his phone, and he told her that the victim could not talk because she was busy crying, but the daughter kept Pierre talking and insisted that she speak with the victim. The daughter believed that as long as Pierre was talking to her, he would not hit the victim. The daughter called 9-1-1 again when the victim screamed for her to call 9-1-1. Both 9-1-1 calls were played for the jury.

Pierre testified that he was angry and banged on the victim's door to confront her about the money she withdrew. He also acknowledged that the victim was on the phone when they had their argument, that the victim soiled herself during the argument, and that the victim's daughter called him on his phone to speak with the victim. However, according to Pierre, the victim's phone was cracked prior to the incident, he was five feet away from her when she said, "don't hit me[,]" and she was

3

walking out of the apartment when she screamed, "call 9-1-1." Pierre testified that he immediately left the room when the victim said "don't hit me" because he realized she was trying to get a reaction from someone on the phone, and he did not know what happened next. Pierre's defense was that his wife fabricated the allegations against him to gain leverage in their divorce.

Based on this evidence, the jury found Pierre guilty of family violence simple battery and criminal trespass, but not guilty of family violence battery. This appeal followed the denial of Pierre's motion for new trial.

In his sole enumeration of error, Pierre asserts that he received ineffective assistance of trial counsel because his attorney failed to (1) object to the admission of a prior hearsay statement bolstering the victim's credibility, (2) object to an allegedly unlawful comment on his silence, and (3) investigate the case and introduce impeachment evidence. Pierre further contends that "the collective effect from trial counsel's deficient performance prejudiced the verdict[.]"

> To establish that his trial counsel was constitutionally ineffective, Appellant must prove both deficient performance by counsel and resulting prejudice. To show that his lawyer's performance was deficient, Appellant must demonstrate that the lawyer performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. This is no easy showing, as the law recognizes a 'strong presumption' that

4

counsel performed reasonably, and Appellant bears the burden of overcoming this presumption. To carry this burden, he must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not. In particular, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.

Even when a defendant has proved that his counsel's performance was deficient in this constitutional sense, he also must prove prejudice by showing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Rather, Appellant must demonstrate a 'reasonable probability' of a different result, which, the United States Supreme Court has explained, is a probability sufficient to undermine confidence in the outcome.

The reviewing court need not address both components of the inquiry if the defendant makes an insufficient showing on one. In all, the burden of proving a denial of effective assistance of counsel is a heavy one, and Appellant has failed to carry that burden.

*Brown v. State*, 302 Ga. 454, 457-458 (2) (807 SE2d 369) (2017) (citations and punctuation omitted). See also *Jones v. State*, 318 Ga. App. 342, 346 (3) (733 SE2d 400) (2012) (defendant must show by clear and convincing evidence that the performance of his lawyer was not within the range of reasonable professional lawyering).

5

Whether a trial attorney renders constitutionally ineffective assistance is a mixed question of law and fact. "The proper standard of review requires that we accept the [trial] court's factual findings unless clearly erroneous, but we independently apply the legal principles to the facts." *Head v. Carr*, 273 Ga. 613, 616 (4) (544 SE2d 409) (2001). Moreover, the Supreme Court of Georgia has held that an acquittal on one or more counts "is a relevant factor which strongly supports the conclusion that the assistance rendered by the attorney fell within that broad range of reasonably effective assistance." *Moon v. State*, 288 Ga. 508, 516 (9) (705 SE2d 649) (2011) (citation and punctuation omitted). Thus, Pierre's acquittal on the charge of family violence battery is a strong indicator that his trial counsel was effective. After reviewing Pierre's claims in accordance with these standards, we conclude that Pierre has not met his burden of demonstrating that his trial counsel was ineffective.

We first note that Pierre's counsel testified at the motion for new trial hearing that at the time of the hearing he had performed approximately 40 jury trials, and one-fourth of them had involved batteries. Trial counsel explained that his strategy for Pierre's defense was to use "brute force, he said, she said," which he had used as a successful strategy in other battery cases. In addition, the transcript shows that trial

6

counsel subjected the State's witnesses to a thorough and sifting cross-examination, made appropriate objections, and succeeded on a motion in limine.

1. We begin with Pierre's argument that his trial counsel performed deficiently by failing to object to the admission of a prior hearsay statement bolstering the credibility of the victim. Specifically, Pierre contends that his trial counsel should have objected to the admission of the victim's written statement given to police because the victim's veracity had not been attacked, and, thus, the prior consistent statement was inadmissible. We find no error.

Prior consistent statements generally are admissible only where the witness's credibility has been attacked or to rebut a charge of recent fabrication or improper influence or motive. OCGA § 24-6-613 (c). It is undisputed that these issues were not present in this case. However, trial counsel testified at the motion for new trial hearing that he did not object to the introduction of the victim's written statement because it was introduced at the end of the victim's direct testimony and he wanted to use it to impeach the victim. According to trial counsel, he likes to have an "anchor" to lock the witness into their statements so "even if they testified exactly to [the written statement] on direct, maybe on cross I can get them to have their story unravel. So, they're locked in on this written statement. And if they deviate on cross,

7

then I can attempt some impeachment there." In fact, trial counsel used the statement during the victim's cross-examination to highlight a potential discrepancy. "Such trial tactics and strategy are not susceptible to attacks of ineffective assistance; therefore, this claim is without merit." *Abernathy v. State*, 299 Ga. App. 897, 905 (3) (d) (685 SE2d 734) (2009) (citation and punctuation omitted).

2. Pierre next argues that his trial counsel was ineffective for failing to object to commentary on his silence. We disagree.

During Pierre's direct examination, trial counsel asked Pierre what he remembered about the police coming on the day of the incident and whether they took any photographs or documentary evidence. Trial counsel then asked what led to the police arresting him, to which Pierre responded that the upstairs officer who had been speaking with his wife gave the downstairs officer who was with him some type of confirmation, and the downstairs officer arrested him. On cross-examination, the State asked Pierre about the police visit:

> Q. Mr. Pierre, you mentioned the police came out. You didn't make a written statement to the police; did you?
> A. No, because --
> Q. At any point?
> A. I did not make a written statement because I didn't feel that there was any reason to. There was no crime, nothing.
> Q. So, you did not -- so, just to clarify, you did not make a statement?

A. I did not.

Pierre asserts that trial counsel was ineffective for not objecting to the State's questions because they commented on his silence.

Regardless of whether the State's questions constituted prohibited comments on Pierre's silence, Pierre's trial counsel explained that he made a strategic decision to withhold an objection. Trial counsel explained during the motion for new trial hearing that he knew the State's questions were objectionable, but he strategically chose not to object to them. According to trial counsel, he

> wanted the jury to hear [Pierre's] answer because [he and Pierre] had had this conversation and I already knew what [Pierre's] answer was going to be. And I liked what his answer was going to be, which is, you know, the reason I didn't make a statement is because there was nothing to state, there was no crime. I knew that's what he was going to say.

In addition, trial counsel testified that the State's questions supported the defense strategy: Trial counsel was

> going for the angle that this whole thing was snowballing from the beginning as a one-sided narrative. All they had was the officers -- They talked to Ms. Pierre, they interviewed Ms. Pierre, they got a statement from Ms. Pierre. And nobody talked to this Defendant. Nobody took a statement from him. They focused on her. The whole thing was it was snowballing as a one-sided narrative. And I was, at the time, committed to that theory of the case.

9

"As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." *Billington v. State*, 313 Ga. App. 674, 676 (1) (722 SE2d 395) (2012) (citation and punctuation omitted). In other words, "[t]rial tactics and strategy . . . are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." *Gregoire v. State*, 309 Ga. App. 309, 311 (2) (711 SE2d 306) (2011) (citation and punctuation omitted). Here, "the record clearly reflects that [trial counsel's] decision was based on a reasonable, knowing trial strategy, even if unwise, and so trial counsel was not deficient for failing to object to the State's comments on [Pierre's] silence." *Hawkins v. State*, 350 Ga. App. 862, 875 (8) (b) (830 SE2d 301) (2019). Pierre failed to show that trial counsel's decision not to object to the State's questions was "so patently unreasonable that no competent attorney would have chosen [it]." Id. at 874 (8) (b). As a result, Pierre failed to meet his burden of proving ineffective assistance of counsel on this ground.

3. Pierre maintains that his trial counsel was ineffective for failing to investigate the case and present exculpatory evidence. Specifically, he asserts that trial counsel should have obtained and introduced the victim's cellular phone records and bank records. We find no error.

a. *Phone records*. Pierre argues that trial counsel was ineffective for failing to subpoena and introduce the victim's phone records because the records allegedly contradicted both the victim's testimony that she was on the phone with her daughter at the time of the incident and her daughter's testimony that she heard the victim scream and immediately called 9-1-1.[1] We disagree.

At the second motion for new trial hearing, Pierre introduced the victim's phone records for the date of the incident and called a custodian of records for AT&T to testify that the victim was not on the phone at the time of the incident. On cross-examination, however, the records custodian admitted that the phone records show that the victim was on the phone from 5:44 p.m. to 6:35 p.m. with a caller from a single number, and that same number repeatedly tried to call the victim's phone after 6:37 p.m. This testimony corroborated the victim's and her daughter's testimony, and, as trial counsel testified, would not have helped Pierre's defense. Accordingly, we

---

[1] In his appellate brief, Pierre does not support his assertion that the victim's daughter called 9-1-1 at 6:44 p.m., 9 minutes after hearing her mother's plea, with any citation to the record. Instead, the brief simply notes, "cite discovery[.]" "[I]t is not the function of this Court to cull the record on behalf of a party in search of instances of error. The burden is upon the party alleging error to show it affirmatively in the record." *Harris v. State*, 358 Ga. App. 204, 204 (1) (854 SE2d 374) ( 2021) (citation and punctuation omitted); see also *St. Germain v. State*, 358 Ga. App. 163, 166 (1) (d) (853 SE2d 394) (2021).

conclude that the trial court did not clearly err in finding that Pierre failed to demonstrate a reasonable probability that the results of the proceeding would have been different if the cellular records had been subpoenaed and introduced into evidence by defense counsel at trial. *Wright v. State*, 302 Ga. App. 101, 105-106 (5) (690 SE2d 220) (2010); see also *Taylor v. State*, 301 Ga. App. 104, 106 (686 SE2d 870) (2009) (defendant failed to carry his burden to show that, but for counsel's failure to obtain and introduce evidence, there was a reasonable probability that the outcome of the trial would have been different).

b. *Bank records*. Pierre asserts that trial counsel should have subpoenaed the victim's bank records to controvert her testimony that she transferred funds from the joint account to her personal account because she had "nothing." Trial counsel testified that he did not subpoena the victim's bank records because of the nature of the charges; the charges involved family violence simple battery and criminal trespass, not theft or conversion. According to Pierre, however, the victim's bank records, which he introduced at the motion for new trial hearing, would have shown that the victim had $7,500.00 in connected accounts.

Assuming, without deciding, that trial counsel's failure to subpoena the victim's bank records and use them to impeach the victim's testimony that she was

destitute provided clear and convincing evidence that the performance of his lawyer was not within the range of reasonable professional lawyering, see *Jones*, 318 Ga. App. at 346 (3), we agree with the trial court that Pierre has failed to demonstrate that any such deficiency would have resulted in a different outcome. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Taylor*, 301 Ga. App. at 106 (citation and punctuation omitted). Given the evidence in this case, it is not reasonably probable that the jury would have found Pierre not guilty of family violence simple battery and criminal trespass had the victim's bank records been admitted. Accordingly, the trial court did not err in denying Pierre's claim for ineffective assistance of counsel on this ground.

4. Citing *State v. Lane*, 308 Ga. 10, 16 (1) (838 SE2d 808) (2020), Pierre asserts that his trial counsel's collective deficiencies create a reasonable probability of a different outcome. "The cumulative error doctrine provides that an aggregation of non-reversible errors can yield a denial of the constitutional right to a fair trial, which calls for reversal." *Lofton v. State*, 309 Ga. 349, 366 (7) (846 SE2d 57) (2020) (citation and punctuation omitted). The assumed deficiencies we must consider collectively in this case include (1) trial counsel's failure to subpoena and introduce

13

the victim's telephone records at trial, and (2) trial counsel's failure to subpoena and introduce the victim's banking records at trial.

As stated in Division 3 (a), the phone records and AT&T custodian's testimony proffered by Pierre at the motion for new trial showed that the victim was on the phone from 5:44 p.m. to 6:35 p.m. with a caller from a single number, and that same number repeatedly tried to call the victim's phone after 6:37 p.m. This testimony corroborated the victim's and her daughter's testimony, and would not have helped Pierre's defense. In addition, as stated in Division 3 (b), the banking records proffered by Pierre at the motion for new trial hearing showed that the victim had $7,500.00 in connected accounts. While these records might have controverted the victim's testimony that she transferred funds from the joint account to her personal account because she had "nothing," the State's case did not hinge on the credibility of the victim alone. The broken cell phone, 9-1-1 calls, and testimony of the victim's daughter also supported Pierre's convictions for family violence simple battery and criminal trespass.

Even when considered as a whole under the most demanding standard that applies to any of the alleged errors, the cumulative prejudicial effect of trial counsel's assumed deficiencies is not sufficient to outweigh the strength of the properly

14

admitted evidence of Pierre's guilt. Accordingly, we conclude that the combined prejudicial effect of the assumed deficiencies by trial counsel did not deprive Pierre of his right to a fundamentally fair trial. See *Lofton*, 309 Ga. at 367 (7). The trial court did not err in denying Pierre's motion for new trial.

*Judgment affirmed. Hodges and Pipkin, JJ., concur.*